**Raymond Alton PRIDDY, Plaintiff,**

v.

**Asher B. EDELMAN, Plaza Securities Company, FH Acquisition Corporation, FH Partners, L.P., FH Management Corporation, Fruehauf Corporation, Robert D. Rowan, Frank P. Coyer, Jr., Thomas J. Reghanti, Russell G. Howell, Jack Breslin, Donald F. Chamberlin, John P. Grace, John C. McCabe, Dean E. Richardson, Francis J. Sehn, James S. Wilkerson, Merrill Lynch & Co., Inc., Merrill Lynch Capital Markets of Merrill Lynch, Pierce, Fenner & Smith, Incorporated, LMC Holdings, Inc., LMC Acquisition Corporation and Kidder, Peabody & Co. Incorporated, Defendants.**

Civ. No. 86–73941.

United States District Court,
E.D. Michigan, S.D.

Feb. 23, 1988.

Sidney B. Silverman, Silverman & Harnes, New York City, for plaintiff.

William M. Saxton, Butzel, Long, Gust, Klein and Van Zile, Gregory Curtner, Miller, Canfield, Paddock and Stone, Ronald Longhofer, Honigman Miller Schwartz and Cohn, Detroit, Mich., Andrew Zack, Davis Polk & Wardwell, New York City, for defendants.

## MEMORANDUM OPINION

ANNA DIGGS TAYLOR, District Judge.

Plaintiff filed the complaint in this case on September 17, 1986, "individually and representatively on behalf of all holders of shares of common stock of Fruehauf." (Complaint ¶ 2(b)) He named as defendants two groups of parties who previously have been before this court in litigation against each other in *Plaza Securities Company, et al. v. Fruehauf Corporation, et al,* and *Fruehauf Corp., et al. v. Edelman, et al.,* 643 F.Supp. 1535 (E.D. Mich.1986). This court's preliminary injunction in that matter was affirmed with modification by the Sixth Circuit Court of Appeals. *Edelman, et al. v. Fruehauf Corp.,* 798 F.2d 882 (6th Cir.1986). Those lawsuits were voluntarily dismissed on August 22, 1986. In addition to the original parties, Plaintiff has added Kidder, Peabody & Co., Inc., Merrill Lynch & Co., Inc. and several Merrill Lynch subsidiaries, as defendants. All of the Merrill Lynch defendants hereinafter will be designated as Merrill Lynch.

The initial Fruehauf litigation commenced in March of 1986 when Asher Edel-

man, through his limited partnership, Plaza Securities, became the unwelcome suitor for control of the Fruehauf Corporation, and Fruehauf's Board and management turned to the Merrill Lynch subsidiary, LMC Holdings, as their White Knight. The Edelman group initiated the first of these lawsuits when Fruehauf management refused a request for the list of shareholders which the Edelman group needed to use in an attempt to elect supporters as Directors at the May 1, 1986 annual meeting. Although the list was ultimately obtained, the Edelman group failed to win a voice on the Board. Having made approximately five unsuccessful offers to the Board and management for the company, it then commenced a tender offer on June 11, 1986. That offer was for all outstanding common stock at $44.00 per share, closing on July 3, 1986.

The Fruehauf Board then convened a special meeting at which it was advised by Kidder Peabody, its financial advisor, that Edelman would probably succeed in taking over the company. Soon thereafter the Board approved a leveraged buyout proposal designed by Merrill Lynch and Kidder Peabody which would place the company in the ownership of a newly formed Merrill Lynch subsidiary and Fruehauf management, and announced a tender offer commencing June 27, 1986.

The Edelman group then requested a preliminary injunction against the Merrill Lynch-management tender offer, and the Fruehauf group sued to enjoin the Edelman tender offer. A shareholder, Mr. William Steiner, also sued the Fruehauf defendants seeking, as Edelman did, to enjoin the Merrill Lynch-management leveraged buyout on behalf of all common shareholders. The motion for preliminary injunction in that case, *Steiner v. Fruehauf*, was heard and decided with the two previously cited. That case remains pending in this court.

This court's opinion, containing its findings of fact and conclusions of law in granting Edelman the requested relief and denying the requests of Fruehauf and

Steiner, has been published and will not be restated here.

The Sixth Circuit wrote, at 798 F.2d at 886, as follows:

> Once it becomes apparent that a take-over target will be acquired by new owners, whether by an alleged "raider" or by a team consisting of management and a "white knight", it becomes the duty of the target's directors to see that the shareholders obtain the best price possible for their stock.... When, in violation of this duty, directors take measures that are intended to put an end to the bidding, those measures may be enjoined.

That court's injunctive order concluded in the following terms, at 798 F.2d at 891:

> To ensure an open bidding process for Fruehauf, defendants are ordered to refrain from taking any corporate actions which are intended to or have the effect of favoring or advantaging any particular bidder over any other bidder. Defendants are further ordered to make available upon reasonable notice to any potential bidder for Fruehauf all information concerning Fruehauf's business and properties ... and to meet on mutually agreeable and reasonable terms with any potential bidder in good faith. Defendants are enjoined from any further breaches of their fiduciary duties to Fruehauf's shareholders in connection with the contest for control.

\*   \*   \*   \*   \*   \*

The material facts concerning the conduct of defendants herein after the August 8, 1986 order of the Sixth Circuit have been presented by the defendants in the affidavits, depositions, and exhibits filed with their motions for summary judgment, and are undisputed.

A special committee of Fruehauf's outside directors previously had been appointed by the Board to study and make recommendations concerning offers made for the company. The committee was advised, as was the entire Board, by Kidder Peabody.

After the injunction the committee set out to maximize value for the shareholders

under the circumstances, as it had been enjoined to do.

On August 11th the committee wrote to both Merrill Lynch and the Edelman group that it would consider a transaction of at least $48.50 per share for the shareholders, that both contenders' last bids had been within that range, and that they should each, accordingly, submit their best and final offers, with full supporting documentation, no later than August 18th.

On August 18th the Edelman group offered a two step transaction by which it would first make a tender offer for 51% of Fruehauf's common stock (or approximately 10.9 million shares) at $49.50 per share. At a second step merger, the remaining shares would be exchanged for $51.00 or equivalent securities. A liquidation of substantial corporate assets would be made to raise the funds necessary for the second step.

The Merrill Lynch response of August 18th was that its previous offer of June 27th was its best and final offer. That offer had been a first step tender offer for 77% (or approximately 17.5 million shares) of Fruehauf's common stock at $48.50. The second step would be $48.50 cash or equivalent securities, as valued by Fruehauf's investment banker.

Upon receipt of those two "best and final" offers, the special committee was presented with a dilemma. The financial advisors (Kidder Peabody was now joined by the newly retained Salomon Brothers) pointed out to the committee the positives and negatives for shareholders of both offers.

The Edelman group offered more cash, but for only 51% of the shares, at the first step. Merrill Lynch's offer was for one dollar less but for 77% at that stage. As for the second step, the Edelman offer raised concerns whether the large sales of corporate assets could or would be conducted quickly enough to provide the planned $51 shareholder value. The Edelman group would not commit to any specific schedule for either the liquidations or the redemptions proposed. Moreover, there was concern whether, when so much of the company had been sold, the remaining operations could service the debt necessary to realize $51 value at the second step.

Meanwhile, Fruehauf earnings were declining and, as time passed, Merrill Lynch raised the possibility that it might withdraw. If that were to occur, the committee's concern was that the Edelman group could have taken the company unopposed, for less than $48.50 per share, and precipitated a genuine loss for the shareholders. Time became of the essence to the committee. The advisors requested permission, and the special committee granted it, to call upon the two bidders for clarification of their plans and, if possible, to obtain a more clearly favorable bid.

The Edelman group was unwilling to go any higher or to give any further assurances. Edelman subsequently testified that the more he learned about the company, the less it was worth to him: that he not only would not raise his price but was getting cold feet on the offer already made.

Merrill Lynch was willing to increase its bid, but only on condition that a settlement be made with the Edelman group. Merrill Lynch's principal source of funds, Manufacturer's Hanover Bank, would allow no increase unless a settlement were reached. Accordingly, Merrill Lynch approached Edelman about a settlement, and found him amenable. Neither Fruehauf's Directors nor its financial advisors participated in the settlement negotiations which then ensued between the contenders, and proceeded to a resolution by August 22, 1986.

By the terms of that settlement, Merrill Lynch purchased the Edelman group's 2,131,007 shares of Fruehauf at $49.00 per share. The Edelman group was indemnified for any liabilities arising out of the transaction and, as Edelman had demanded, Merrill Lynch paid the group $21,065,-000 on account of the expenses which the group had claimed it incurred in its efforts for Fruehauf. Edelman refused to document the expenses, but Merrill Lynch agreed to the payment, in order to settle the war of attrition. Both groups terminated their pending tender offers without purchasing any shares, and both groups

dismissed all pending litigation against each other. They presented their stipulation to this court and this court had entered its Order of Dismissal by mid-day on August 22d. The Edelman group also had agreed that for five years it would not acquire shares in Fruehauf or in the Merrill Lynch subsidiary engaged in the merger transaction.

The settlement complete, Merrill Lynch then (also on August 22d) made an increased bid of $49.50 per share in a proposed tender offer for 14,575,000 shares, or 71%, of Fruehauf corporation. The proposed second step was for $49.50 in cash or securities.

The special committee met, and was advised by both Kidder Peabody and Salomon Brothers that the blended value of this proposal was a greater value to shareholders than any other proposed transaction. The sworn documents of record support the depth of analysis and reasonableness of conclusions reached which defendants attribute to this advice. The special committee then met with the Board, recommended acceptance of the offer, and the Board did so.

On August 28th the Merrill Lynch tender offer was commenced on the terms described above, and shares were accepted for payment thereunder on September 25th. The second step merger was accomplished on December 23, 1986.

\* \* \*

Plaintiff Priddy filed this action on September 17, 1986, stating that he was, "at all relevant times", the owner of common stock of Fruehauf corporation. He does not claim to have tendered his shares in response to any offer ever made. Also, although Priddy claims on behalf of all Fruehauf common shareholders, and although the motion-filing deadline in this lawsuit passed four months ago, no class certification motion has been filed.

The Priddy complaint alleges that the Fruehauf directors violated their fiduciary duties and the August 8th injunction by approving the August 22d Merrill Lynch offer when, in fact, they knew that the August 18th Edelman offer was the high-est value ever offered to the shareholders; that the August 28th tender offer violated the Williams Act, 15 U.S.C. § 78n, and SEC Rule 14(d)(10), 17 C.F.R. § 240.14d–10 promulgated thereunder; and that the Edelman group violated the fiduciary duty to all shareholders which it had acquired by filing the *Plaza Securities* action, in settling that case on terms more favorable to itself than were available to all other shareholders.

On October 23, 1987, after full discovery and on the last date for filing motions, all defendants in this action filed motions for summary judgment with sworn documents on all material facts. On December 4, 1987, plaintiff responded that:

> The plaintiff no longer contends ... that the Fruehauf stockholders should have accepted the competing offer made by the Edelman defendants. Rather, plaintiff submits that the same offer made to the Edelman group defendants should have been made to all shareholders.

Plaintiff's response also includes a request for leave to file an amended complaint stating this new theory of the case, *inter alia,* and for summary judgment in favor of plaintiff on the amended complaint.

Plaintiff now argues that the undisputed record establishes the following:

1. That the purchase of the Edelman shares by the Fruehauf defendants was on preferential terms and during the pendency of a tender offer, therefore violative of both Rules 14(d)(10) and 10(b)(13) of the SEC;

2. That Fruehauf's directors violated their fiduciary duty and the injunction by approving an offer which benefitted other defendants at the expense of public shareholders;

3. That the Edelman defendants breached their fiduciary duty to other shareholders by settling their litigation to advantage and to the detriment of the others; and

4. That the August 28th tender offer circular contained material misrepresentations.

\* \* \* \* \* \*

I. *Plaintiff's Request for Leave to Amend the Complaint*

This request must be denied, as must be the summary judgment which plaintiff requests be entered in his favor on the claims of the proposed amended complaint.

■ Discovery has been long and voluminous in this 1986 case. Trial has long been set for a date soon after the date set for hearing of the defense motions for summary judgment. The defense motions were filed on the motion filing deadline in October of 1987. Plaintiff, nevertheless, saw fit to wait six more weeks and respond to summary judgment motions with a request to amend and for judgment on newly proposed claims and theories. No extension of deadlines has been sought, and no explanation offered for failing to meet the court's schedule or indeed for failing to respond, as required by Federal Rule of Civil Procedure 56, to the summary judgment motion of an adverse party.

For reasons fully discussed below, plaintiff's new claims are without merit and, like the claims of the initial complaint, cannot withstand the pending motions, which rest upon a very substantial body of undisputed facts. It would, accordingly, be a futility to file the proposed amended complaint. Moreover, the request for leave to file is untimely, on the well settled law. *See Moore v. Paducah*, 790 F.2d 557 (6th Cir.1986); *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663 (5th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981), *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir.1981). The request therefore is denied.

II. *The Fiduciary Duty of the Edelman Group*

Plaintiff has claimed in both of his complaints that the Edelman group became the fiduciary of all shareholders when it filed *Plaza Securities v. Fruehauf* in this court, and that it violated a fiduciary duty in settling that case for terms unavailable to all. On the undisputed facts of record and under oath in this case, summary judgment for defendants must be granted on this claim.

■ First, on the undisputed facts, the Edelman group did not acquire a fiduciary duty to all shareholders when it filed the *Plaza Securities* case. That lawsuit never purported to be one brought for the benefit of all stockholders, or a derivative action. The *Plaza* complaints (both first and amended) stated causes of action for the group alone, as a rejected suitor for control of the Fruehauf corporation. Plaintiff's reliance upon press releases, argument, and even the court's language concerning the duties of the Fruehauf defendants to obtain highest value for shareholders, does not overcome the simple language of the complaints and the clear fact that Edelman did not sue for the general welfare, but for his own benefit, as a bidder. Plaintiff William Steiner's suit, *Steiner v. Fruehauf*, moreover, was before the court as a companion case with Edelman's and was filed on behalf of all shareholders. The interest of the Edelman group was to buy the company as cheaply as possible, whereas the diametrically opposed interest of the shareholders, represented by Steiner, was to sell the company at the highest possible price. There can be no question of Edelman representing that class.

The Edelman defendants never acquired control of the Fruehauf Corporation, either. At most, they acquired 2,131,077 shares, or 9.3%, of the common stock. Therefore, no fiduciary duty concomitant with a controlling interest in the corporation, or with the Board representation which they were unable to win, may be imposed upon them. In the absence of Michigan law on questions of corporate law, this court may look to Delaware law. *See Russ v. Federal Mogul Corp.*, 112 Mich.App. 449, 316 N.W. 2d 454 (1982). Delaware law is settled on this point. *In re: Sea–Land Corp. Shareholders Litigation*, No. 8453, slip op. at 9–10 (Del.Ch. May 22, 1987), [Available on WESTLAW, 1987 WL 11283], states as follows:

[A] stockholder has fiduciary obligations only if it is a controlling stockholder. A stockholder is not deemed controlling unless it owns a majority of the stock ... or has exercised actual domination and

control in directing the corporation's business affairs.

*See also Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del.Ch.1984); *Aronson v. Lewis*, 473 A.2d 805, 815 (Del.1984); *Kaplan v. Goldsamt*, 380 A.2d 556 (Del.Ch.1977).

■ Assuming, arguendo, that the Edelman defendants did have some fiduciary duty under the circumstances, this court would still be constrained to grant their motion for summary judgment because there is no question of any material fact which would suggest that they breached it. This court has before it volumes of sworn facts in this case and plaintiff has disputed none of those upon which defendants rely. Plaintiff simply seeks a different conclusion.

The Edelman group's stock was sold to the white knight, Merrill Lynch, for $49, whereas the offer to remaining shareholders was for $49.50 or its equivalent. The "premium" arguably paid to Edelman, therefore, can only be the $21 million payment for expenses which he extracted from Merrill Lynch to settle out of the contest. Plaintiff has failed, however, to controvert the testimony and other sworn documents which demonstrate that this payment *was* in fact made on account of expenses claimed. Edelman may have refused to document the demand to Merrill Lynch, but the subsequent undisputed sworn filings of the Edelman group establish that its costs and expenses were in fact *greater* than the amount obtained, and possibly as high as $30 million.

Moreover, even if we assume that Edelman did obtain a premium, a shareholder is not prohibited from doing so by the law, and Edelman obtained this settlement, not from the target corporation, Fruehauf, of which he was a shareholder, but from a third party attempting to acquire that target, from whom any shareholder is free to extract what price he may. There also, of course, has been no showing that the funds paid to Edelman would otherwise have been paid to other Fruehauf shareholders rather than retained for the future use and benefit of Merrill Lynch or its bankers. The transaction proposed by Merrill Lynch

on August 22d was the highest value ever made or available to Fruehauf shareholders despite the prior payment to Edelman; and neither did the Fruehauf Board have any participation, on the undisputed facts in this record, in the settlement which was reached in order to make that offer possible, nor were Fruehauf's funds used.

## III. *Violations of the Rules of the Securities and Exchange Commission*

Rule 14(d)(10) of the Rules of the Securities and Exchange Commission, 17 C.F.R. § 240.14 d—10, promulgated pursuant to § 14(d) of the Williams Act, 15 U.S.C. § 78n, provides in pertinent part that:

(a). *No bidder* shall make a tender offer unless ... (2) The consideration paid to any security holder pursuant to the tender offer is the highest consideration paid to any other security holder during such tender offer. (emphasis added).

Similarly, § 14(d)(7) of the Williams Act, 15 U.S.C. § 78n(d)(7), provides:

Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, *such person* shall pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer ... whether or not such securities have been taken up by such person before the variation of the tender offer...."

Plaintiff claims that all defendants have violated Rule 14(d)(10) because of the settlement made with the Edelman group.

■ First, the language of both the statute and the rule is applicable by its terms only to a bidder, and not to a selling shareholder. Therefore, this claim must be dismissed against the Edelman defendants.

Next, as has been discussed above, on the undisputed facts the Edelman group was not paid a premium for its shares when its claimed expenses were paid in exchange for settling out of the contest. For that reason alone, summary judgment

should enter in favor of all defendants on this issue.

■ Nevertheless, the matter should be fully laid to rest. Because plaintiff fails to allege which, if any, of the tender offers in this saga he tendered his shares into, the difficulties of adjudicating his claim render his standing extremely dubious, and certainly would preclude him from class representation if that had been timely requested. But when this claim is measured against any tender offer made (Edelman's, Merrill Lynch's of June 27th, or Merrill Lynch's of August 28th), it must fail on the undisputed facts. The Edelman group's shares were not purchased during or pursuant to any tender offer whatsoever, even if a "premium" is assumed to have been paid for them. Therefore, again on the undisputed facts, this claim must fail completely.

When Edelman's shares were purchased and the settlement made on August 22d, the Merrill Lynch tender offer had been terminated without purchase of any shares, according to the undisputed affidavit of Willis Hesselroth. Moreover, the next and final Merrill Lynch tender offer did not commence until August 28th. An offeror is free to terminate an offer and then purchase shares upon whatever other terms may be negotiated, free of the constraints of the above-quoted rules. *Hanson Trust P.L.C. v. SCM Corp.*, 774 F.2d 47, 58–59 (2d Cir.1985).

Plaintiff has argued in rebuttal that the August 28th Merrill Lynch tender offer actually commenced on August 22d, the day it was approved, and the purchase of Edelman shares was made "during" that offer, within the meaning of the rule. That theory, however, is based upon a proposed and rejected revision of SEC Rule 14(d)(2), 17 C.F.R. § 240.14d–2 and is not supported by the actual rule, which provides that an offer is commenced on the date it is "published, sent, or given to security holders." That date, undisputedly, was August 28th. Accordingly summary judgment will enter on this claim. The Edelman shares were not purchased during or pursuant to any tender offer.

■ Next, in rebuttal and in the proposed amended complaint, plaintiff charges the defendants with violation of SEC Rule 10(b)(13), which provides as follows:

§ 240.10b–13—*Prohibiting other purchases during tender offer or exchange offer.*

(a). No person who makes a cash tender offer or exchange offer for any equity security shall, directly or indirectly, purchase, or make any arrangement to purchase, any such security ... otherwise than pursuant to such tender offer or exchange offer from the time such tender offer or exchange offer is publicly announced or otherwise made known by such person to holders of the security to be acquired until the expiration of the period ... during which securities tendered pursuant to such tender offer ... may ... be accepted or rejected.

This claim of the untimely proposed amended complaint is clearly without merit. Its filing would be a futility.

Plaintiff argues that, inasmuch as the June 27th Merrill Lynch tender offer had once been extended to 6:00 p.m. on August 22d, the purchase of the Edelman shares on that date constitutes a violation of this rule. On the undisputed facts, however, the execution of the settlement agreement and termination of both pending tender offers without purchase of any shares, the presentation to this court of a stipulation of dismissal of all litigation, and this court's entry of its order of dismissal, all were accomplished by the afternoon of August 22d. Moreover, the affidavit of Willis Hesselroth of the Merrill Lynch subsidiary dealer manager for both Fruehauf tender offers, is undisputed and states that the first offer was terminated before Edelman's shares were purchased. The court has previously discussed its finding that no premium was paid for the Edelman shares, whenever they were purchased.

The August 28th offer, as discussed above, did not commence until that date.

Finally, inasmuch as plaintiff has never claimed that he tendered his shares into any tender offer, the law under Rule 10(b)(13) is settled that he has no standing

to contest a purchase or arrangement to purchase outside of an offer under that Rule. *Beaumont v. American Can Co.,* 797 F.2d 79, 84 (2d Cir.1986); *Field v. Trump,* 661 F.Supp. 529 (S.D.N.Y.1987).

## IV. *Disclosure Violations*

In his response to the defense motions, plaintiff has for the first time claimed four violations of the antifraud provisions of the Securities Exchange Act, 15 U.S.C. § 78a *et seq.* These claimed violations are part of the proposed amended complaint and their lack of merit again demonstrates the futility of permitting the complaint to be filed.

The Act provides, in relevant part, at Section 14(e) (15 U.S.C. § 78n(e)):

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders or any solicitation of security holders in opposition to or in favor of any such offer, request or invitation.

■ Plaintiff claims several material misrepresentations are included within the August 28th Merrill Lynch tender offer circular. First among those is the allegedly false statement that the Edelman defendants had been paid $21,065,000 on account of expenses incurred in connection with their efforts to gain control of Fruehauf. As this court has discussed above, plaintiff has failed to raise a question of material fact that the payment was not for expenses. The undisputed evidence of record is that it was. Accordingly, the statement was not false. Moreover, the question of the amount of such a payment is hardly material to the decision of a reasonable Fruehauf shareholder as to whether to tender or not. *See TSC v. Northway,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). The expenses were paid by Merrill Lynch, not by Fruehauf, and are not material to a shareholder's decision on the value of the target or the merits of the offer made.

■ Second, the August 28th offer circular was allegedly misleading in stating that shareholders at the second step merger would receive either $49.50 in cash or Exchange Securities, at the election of Merrill Lynch Holdings, when in fact defendants knew that the payment of cash was less likely than the exchange of securities. The court finds no merit in this claim. The circular makes no claim or suggestion that a cash payment would be a more likely choice than a securities exchange. The mention of cash before the mention of securities when the alternatives are listed is of no significance, other than as a matter of standard English form. Cash, being of higher status than securities, is stated first.

Third, plaintiff claims that the offer circular falsely stated that Kidder Peabody and Salomon Brothers "express no opinion as to the value of the Exchange Securities", whereas in fact Kidder and Salomon had actually told the Fruehauf defendants those securities would likely be worth less than $49.50. The offer circular, which is part of this record, reprints the full written opinions of Kidder and Salomon, which do in truth state that they express no opinion on those values. That is not an assurance, most certainly, that those securities *will* be worth $49.50. There is no requirement in law that any valuation be given, and this refusal to hazard an opinion is consistent with the suspicion which had been expressed informally, that the securities may well turn out to be worth less. No false or misleading statement was made.

Finally, plaintiff claims that the August 28th offer falsely represents that the August 22d offer of Merrill Lynch to the Board was superior to all available alternatives. This is, however, what the Kidder and Salomon advisors did in fact advise the Fruehauf Board on August 22d, and plaintiff has offered no competent evidence to raise a question of material fact as to either the truth of that representation or the fact that it was made.

## V. The Alleged Violations of Fiduciary Duty and Judicial Injunction by the Fruehauf Directors

Paragraph 24 of plaintiff's complaint states that the Edelman group's August 18th offer was the highest received and should have been accepted by the Directors.

Defendants' summary judgment papers and exhibits establish, undisputedly, that both of the investment banking firms hired to evaluate offers advised the Special Committee that the blended value of the Merrill Lynch August 22d offer was the highest received. The uncertainties which had been raised by the Edelman August 18th offer, and his unwillingness to offer further assurances are discussed above. The Directors clearly did not breach their fiduciary duty to maximize shareholder value by failing to accept that offer.

Apparently conceding the validity of the defense summary judgment motions on that issue, plaintiff has responded with two other conflicting theories as to which choice the directors made or failed to make, allegedly in violation of their fiduciary duty. The proposed amended complaint, although vague, suggests that duty required the Directors to accept the original Merrill Lynch June 27th offer, the previous acceptance of which had precipitated the injunctive orders of this court.

In his brief, however, plaintiff contradicts both his first and second complaints by stating that "... plaintiff submits that the same offer made to the Edelman group should have been made to all stockholders."

■ As discussed above, it was not the Directors but a third-party bidder for Fruehauf, Merrill Lynch, which paid a settlement to Edelman. If the offer which Merrill Lynch presented on August 22d nevertheless provided the greatest shareholder value available, that side settlement between the two bidders is totally irrelevant to the fiduciary duty of Fruehauf's Directors. The evidence is undisputed that this offer did present such value in the opinion of all concerned, and that the Directors acted only upon the careful and well-reasoned advice of financial advisors of the highest caliber. This court may not substitute its judgment as to which bargain may have been best.

The Supreme Court of Michigan has stated:

> It is not the function of the court to manage a corporation nor to substitute its own judgment for that of the officers thereof.

*Barrows v. J.N. Fauver Co.*, 280 Mich. 553, 558–559, 274 N.W. 325, 328 (1937). Courts "should be most reluctant to interfere with the business judgment and discretion of directors in the conduct of corporate affairs." *In Re Butterfield Estate*, 418 Mich 241, 255, 341 N.W.2d 453, 459 (1983). The "business judgment rule" creates a presumption that directors have acted in accordance with their fiduciary obligations "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interest of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). Nothing in the facts now before the court removes this case from that rule's coverage. Plaintiff's self-contradictory arguments concerning a breach of fiduciary duty and of the court's orders are, therefore, on the undisputed facts, without merit. The claims against Kidder Peabody, and against all other defendants for aiding and abetting the wrongdoings of the Directors must fall with the claims against the Directors themselves.

## Conclusion

For all of the reasons outlined above, IT IS ORDERED that plaintiff's motions for leave to amend and for summary judgment be and hereby are denied, and that defendants' motions for summary judgment be and hereby are granted.

IT IS SO ORDERED.