**Raymond Alton PRIDDY,**
**Plaintiff–Appellant,**
**(88–1299),**
v.
**Asher B. EDELMAN, et al.,**
**Defendants–Appellees.**

**Martin WARSHOFSKY, et al.,**
**Plaintiffs–Appellees,**
v.
**FRUEHAUF CORPORATION, et al.,**
**Defendants–Appellees,**

**Raymond Alton Priddy,**
**Objector–Appellant,**
**(88–1867).**

**Nos. 88–1299, 88–1867.**

United States Court of Appeals, Sixth Circuit.

Argued May 16, 1989.

Decided July 28, 1989.

Sidney B. Silverman (argued), Harold B. Obstfeld, Silverman & Harnes, New York City, Richard E. Shaw, Richard G. Parchoc, Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen, Detroit, Mich., for appellant.

Richard D. Greenfield, Haverford, Pa., Gene A. Farber, Craig, Farber, Downs & Dise, P.C., Detroit, Mich., Stuart D. Wechsler (argued), Goodkind, Wechsler & Labator, New York City, Robert M. Kornreich (argued), Wolf, Popper, Ross, Wolk & Jones, New York City, for plaintiffs-appellees.

Kenneth M. Kramer (argued), Shearman & Sterling, Barbara J. Gould, New York City, Justin G. Klimko, William M. Saxton, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., W. Merritt Jones, Jr., Hill, Lewis, Adams, Goodrich & Tait, James K. Robinson, Ronald Longhofer, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., William R. Norfolk (argued), William L. Farris, Sullivan & Cromwell, New York City, Gregory Curtner, Miller, Canfield, Paddock & Stone, Detroit, Mich., Martin Flumenbaum (argued), Jeh Johnson, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Andrew M. Zack, Barris, Scott, Denn & Driker, Detroit, Mich., Dennis Glazer, Davis, Polk & Wardell, New York City, for defendants-appellees.

Before MILBURN and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

These cases arise out of a contest for control of Fruehauf Corporation, a major producer of truck trailers and cargo containers. Both actions originated as shareholder suits challenging the corporation's acquisition by a group of inside and outside investors.

Case No. 88–1299 comes before us on appeal from a district court order entering summary judgment against the plaintiff on all of the claims in the original complaint and denying leave to file an amended complaint. We conclude that summary judgment was proper on the common law claims set forth in the original complaint and that the district court did not abuse its discretion when it denied leave to file an amended complaint. The federal securities law claim pleaded in the original complaint has, we believe, been abandoned.

Case No. 88–1867 has been settled, but an objecting shareholder has appealed from the district court's order approving the settlement. (The plaintiff in No. 88–1299 is the objector in No. 88–1867.) The parties agree that there is no basis for disturbing the district court's approval of the settlement in No. 88–1867 as fair and equitable unless this court reverses the judgment of the district court in No. 88–1299. Having concluded that the judgment in the latter case must be affirmed, we shall affirm the settlement order in the companion case.

I

In February and March of 1986 an investor group led by Asher Edelman bought a large block of shares in Fruehauf Corporation, a Michigan corporation, with the stated intention of attempting a friendly takeover of the corporation. The holdings of the Edelman group approached 10 percent of Fruehauf's outstanding common stock, which consisted of over 21 million shares. The stock traded in the mid–$20 range. On June 11, 1986, after efforts to negotiate a friendly takeover had failed to bear fruit, the Edelman group made a tender offer for all Fruehauf shares at $44 per share.

Shortly thereafter a group composed of existing Fruehauf management, Merrill Lynch Capital Markets, LMC Holdings, Inc., and others (a group to which we shall refer collectively as "the Merrill group") announced a tender offer of its own. The Merrill group offered $48.50 per share for about 77 percent of the outstanding shares of the corporation. The tender offer formally commenced on June 27, 1986, after

approval by Fruehauf's board of directors. The directors agreed to commit $100 million in corporate funds toward financing the deal and agreed to a "no shop" clause restricting negotiations with other possible bidders.

The Edelman group immediately sought a federal court injunction against the Merrill group's tender offer. On July 24, 1986, the district court enjoined implementation of any aspect of the plan "except as ... ordered by this Court," and ordered a bidding contest for control of Fruehauf. *Plaza Securities Co. v. Fruehauf Corp.*, 643 F.Supp. 1535 (E.D.Mich.1986). We affirmed the district court's injunction, with certain modifications not relevant here. *Edelman v. Fruehauf Corp.*, 798 F.2d 882 (6th Cir.1986).

A shareholder action had been filed on June 27, 1986, by one Martin Warshofsky on behalf of a putative class of Fruehauf shareholders. The goal of this lawsuit was to force an auction for control of the corporation. A similar class action was filed on July 7, 1986, by shareholder William Steiner and others.

A special committee of Fruehauf's outside directors was formed to oversee the court-ordered bidding contest. The committee imposed a deadline of August 18, 1986. On that date the Edelman group proposed a cash tender offer of $49.50 per share for about 10,900,000 shares, to be followed by a merger in which holders of the remaining shares would receive $51 in cash or preferred stock in a new corporation. The Merrill group adhered to its earlier proposal of $48.50 per share for 17,-500,000 shares and $48.50 in cash or a package of securities for the remaining shares. The special committee's outside financial advisors, Kidder Peabody and Salomon Brothers, were unable to recommend one plan over the other; further negotiations were therefore conducted.

In the course of these discussions it became apparent that the Edelman group was not prepared to increase its offer, while the Merrill group was willing to consider increasing its offer if a settlement could be worked out with the Edelman

group. A proposal emerged under which the Edelman group would release any claim it might have against the Merrill group and the Merrill group would buy all of the Edelman group's roughly two million shares at $49 per share and would pay "expenses" of about $21 million said to have been incurred by the Edelman group in connection with the takeover contest. The Merrill group would then commence a cash tender offer for 14,575,000 shares at $49.50 per share, with the remaining shares to be exchanged in the second step of the transaction for $49.50 in cash or a package of securities.

The special committee's financial advisors valued the August 18 Edelman group offer at between $45 and $48.50 per share overall, the August 18 Merrill group offer at between $46.25 and $48.25 per share overall, and the revised Merrill group offer at between $47.50 and $49.25 per share overall. They recommended that the special committee approve the latest offer of the Merrill group. On the morning of August 22, after unanimous endorsement of the new plan by Fruehauf's special committee and the company's full board of directors, the Edelman and Merrill groups executed a purchase agreement under which the Edelman group's shares were sold on the agreed terms. A settlement agreement under which the Edelman group released its claims against Fruehauf and the Merrill group was also executed.

The details of the new tender offer were publicly announced that same day. Following consultations with the plaintiffs in the *Warshofsky* and *Steiner* actions, it was agreed that the plaintiffs in those cases would be permitted to continue discovery with a view toward settlement if the discovery showed that the Merrill group offer was fair to the common shareholders. The tender offer was formally commenced on August 28.

On September 17, 1986, another shareholder, Raymond Priddy, filed a complaint asserting various claims similar to those advanced in the *Warshofsky* and *Steiner* actions. Mr. Priddy did not seek an injunction against completion of the takeover,

and the second step of the merger was completed on December 28, 1986.

While discovery was proceeding in the *Warshofsky* and *Steiner* actions, the defendants moved for summary judgment in the *Priddy* action. On December 7, 1987, without responding to the summary judgment motion, Priddy filed a cross-motion for summary judgment and moved for leave to serve an amended complaint.

The district court granted the defendants' motions for summary judgment, denied the plaintiff's cross-motion, and denied the motion for leave to serve an amended complaint. *Priddy v. Edelman,* 679 F.Supp. 1425 (E.D.Mich.1988). The district court noted that Mr. Priddy's motion for leave to amend was untimely under the terms of a pretrial order that had been entered some time before, and the court based its ruling on that ground. 679 F.Supp. at 1430. The court then went on to examine the various new theories that the plaintiff proposed to introduce into the case and found that the proposed amendment would be futile in any event.

The *Warshofsky* and *Steiner* plaintiffs were satisfied, after discovery, that the terms of the takeover were fair to the common shareholders. On March 28, 1988, the parties in those cases asked the district court to certify the following plaintiff class for purposes of settlement:

"all persons and entities, other than defendants in the [*Warshofsky* and *Steiner* actions] and Asher B. Edelman and persons who acted in concert with him in his efforts to acquire control of Fruehauf Corporation ..., who owned Fruehauf Corporation common stock of record or beneficially at any time from March 10, 1986 to December 23, 1986 (the 'Settlement Class Period') and their successors in interest, immediate and remote, direct and indirect."

Under the terms of the settlement, (1) the *Warshofsky* and *Steiner* actions would be dismissed with prejudice, (2) the defendants would pay plaintiffs' attorney fees in the amount of $400,000, and (3) members of the class would release a long list of possible defendants (including all defendants in the

*Priddy* action except for the Edelman defendants) from

"any and all liability under each and every claim asserted in [the *Warshofsky* and *Steiner*] actions and any and all claims (including, without limitation, claims for breach of any fiduciary duty, fraud, or violation of federal securities law or regulations, or of contributing to, or aiding and abetting any wrongdoing) that have been, may be, or could be asserted by reason of any matter, transaction, event, statement, omission, negotiation, offer or agreement relating to any effort to acquire control of Fruehauf during the Settlement Class Period ... by any member of the Settlement Class in this Court or in any other Court, administrative body or tribunal or arbitration panel of any ... jurisdiction...."

As required by Rule 23, Fed.R.Civ.P., members of the settlement class were notified of the terms of the proposed settlement, of their right "to object to the Settlement *or* be excluded from the Class," and of the procedures governing such objections or requests for exclusion. (Emphasis added.) Unlike several other shareholders, Mr. Priddy never requested exclusion from the class. He did file objections to the proposed compromise, arguing that the return per share under the proposed settlement was not superior to the return available under other alternatives, that there was no new consideration for the plaintiff class's release of claims, and that there was no adequate consideration for Priddy's release of his individual claims. The district court overruled the objections and approved the settlement. *Steiner v. Fruehauf Corp.,* 121 F.R.D. 304 (E.D.Mich. 1988).

Mr. Priddy now appeals to this court, arguing that because the district court's approval of the *Warshofsky* compromise was based on its dismissal of Priddy's individual claims, a reversal in *Priddy* must necessarily lead to a reversal in *Warshofsky* as well. He does not raise the other objections to the compromise that he pressed below.

## II

■ Before Mr. Priddy appealed from the district court's approval of the *Warshofsky* settlement, various defendants in the *Priddy* action filed substantially identical motions in this court "to dismiss or stay this appeal ... without prejudice to renewal only in the event of a timely appeal from *and reversal of* the Order and Final Judgment entered on July 20, 1988" approving the *Warshofsky* settlement. (Emphasis added.) In support of their motions to dismiss or stay the appeal, the defendants make two arguments. The defendants contend first that the district court's approval of the *Warshofsky* settlement somehow precludes this court's consideration of the merits of the appeal from the earlier dismissal of the *Priddy* action. Although the trial judgment in *Warshofsky* would have the effect of barring Mr. Priddy and others bound by the settlement from bringing new lawsuits based on the same sequence of events, the judgment cannot deprive us of appellate jurisdiction over a pending appeal from a preexisting judgment. As the Court of Appeals for the Ninth Circuit held in a similar case, "the latter order can scarcely constitute a bar to the instant action, decided below on an earlier date." *Flood v. Harrington,* 532 F.2d 1248, 1250 (9th Cir.1976).

■ The defendants also argue that because Mr. Priddy voluntarily remained a member of the settlement class, rather than exercising his right to opt out and pursue individual claims, he is bound by the district court's approval of the settlement class's release of claims like Mr. Priddy's. But the *Warshofsky* settlement, by its terms, did not purport to release Priddy's claims against the Edelman defendants, so we must at the very least consider the district court's disposition of the claims against the Edelman defendants. Because Mr. Priddy's appeal in No. 88–1867 is explicitly premised upon winning his appeal in No. 88–1299, we shall consider the merits of the appeal in No. 88–1299 first. The defendants' motions to dismiss that appeal will be denied.

## III

We begin by reviewing the district court's dismissal of the claims asserted in the plaintiff's original complaint.

### A

The plaintiff's complaint alleged that the Fruehauf directors violated their fiduciary duties in the following manner:

"23. Defendant Edelman, on [August 18, 1986], proposed a joint tender offer with Fruehauf for 10,925,652 shares at $49.50 to be followed by a merger in which Fruehauf stockholders would receive, at Defendant Edelman's option, cash or securities worth $51 per share ('Edelman Group Fifth Offer').

24. The Edelman Group Fifth Offer was the highest offer received by the Special Committee, and such offer should have been accepted by the Director–Defendants. Instead, the Special Committee, with the assistance of the Merrill–Lynch Defendants, Edelman Group Defendants, and Defendant Kidder, engaged in a course of conduct described below [*i.e.*, developing and acquiescing in the August 22 plan], the consummation of which constituted a violation of ... the common law fiduciary duty owed to the Fruehauf shareholders...."

The district court disposed of this common law breach of fiduciary duty claim under the business judgment rule. The defendant directors, the court held, were entitled to the benefit of "a presumption that directors have acted in accordance with their fiduciary obligations 'on an informed basis, in good faith, and in the honest belief that the action taken was in the best interest of the company.' " 679 F.Supp. at 1434 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984)). See also *In re Estate of Butterfield*, 418 Mich. 241, 255–56, 341 N.W.2d 453, 458–59 (1983). The plaintiff failed to rebut that presumption. The undisputed evidence showed that the directors had acted only on the careful and well-reasoned advice of financial advis-

ors of the highest caliber, and that in the opinion of all concerned the offer of the Merrill group provided the greatest value that was available. The court declined to substitute its judgment for that of the directors on this question.

 Mr. Priddy argues that the business judgment rule applies only where the directors have exercised due care and that the quick approval of the Merrill plan shows a lack of due care. We are not persuaded that any such lack of care was shown. Although matters moved quickly in this case, the special committee of outside directors was unwilling to take action without the opinions of reputable outside financial advisors. When the advisors were unable to recommend a choice as between the two plans submitted by the August 18 deadline, the special committee refused to endorse either plan and insisted on further talks. Intensive negotiations followed, and both financial advisors concluded that the new plan which emerged from those talks was superior to either of the earlier offers.

The directors' rejection of the bidders' initial offers, close consultation with two carefully selected outside financial advisors, and insistence on further negotiations all bespeak diligence and care. Mr. Priddy points to nothing in the record, other than the compressed time period during which these events occurred, in support of the argument that the directors failed to use due care. Had the directors not moved quickly, there is reason to believe that the deal might have fallen through, leaving the shareholders worse off. Fruehauf's earnings were falling, and both bidders were starting to get cold feet. We do not think that Mr. Priddy has shown the existence of any genuine issue of material fact on the question of whether the directors exercised the requisite degree of care, assuming that the district court was correct in holding the business judgment rule applicable.

The Delaware cases * accord directors' decisions in conducting auctions of corpo-

---

* Fruehauf Corporation is incorporated under the laws of the State of Michigan, and the parties

agree that Mr. Priddy's common law claims (as distinguished from his federal securities law

rate control considerable deference unless there is some indication that the directors are "playing favorites with the contending factions." *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 184 (Del.1986); see also *In re J.P. Stevens & Co.*, 542 A.2d 770, 780–81 (Del.Ch.1988) (special committee's decisions in conducting auction reviewed under business judgment rule if decisions made in good faith and with due care), *appeal refused*, 540 A.2d 1088 (Del.1988); *City Capital Associates Limited Partnership v. Interco, Inc.*, 551 A.2d 787, 802 (Del.Ch.1988) ("Even when the corporation is clearly 'for sale,' a disinterested board or committee maintains the right and the obligation to exercise business judgment in pursuing the stockholders' interest."), *appeal dismissed*, 556 A.2d 1070 (Del.1988).

Having effectively put Fruehauf on the auction block, the directors assumed the role of "auctioneers charged with getting the best price for the stockholders at a sale of the company." *Revlon*, 506 A.2d at 182. We see no indication in the record that the court-ordered auction was conducted in a biased way or that the directors sacrificed or ignored the interests of the common shareholders. See *Unocal Corp. v. Mesa Petroleum Corp.*, 493 A.2d 946, 955 (Del. 1985). "If the board of directors is disinterested, has acted in good faith and with due care, its decision in the absence of an abuse of discretion will be upheld as a proper exercise of business judgment." *Id.* at 957; see also *Revlon*, 506 A.2d at 182 (noting that directors' actions in running auction are evaluated under standard set out in *Unocal*). Thus we agree with the district court that the directors' approval of the offer of the Merrill group must be evaluated under the business judgment rule and not the more stringent "entire fairness" standard.

In granting summary judgment on this claim, the district court cited "[t]he uncertainties which had been raised by the Edel-man August 18th offer, and [Edelman's] unwillingness to offer further assurances," as well as the advice of both of the Fruehauf directors' financial advisors that the Merrill offer of August 22 was the best deal for the shareholders. 679 F.Supp. at 1434. The second step of the Edelman offer of August 18 was particularly risky. The proposed $51 per share buyout in cash or nominally equivalent securities was contingent on corporate assets being sold quickly enough and at a high enough price to raise sufficient cash to make the payments. The Edelman group refused to commit itself to any definite timetable for completing the liquidations necessary to finance the second step of the takeover. As the district court noted, there was considerable doubt as to whether Fruehauf's remaining operations could produce enough revenue to service the debt that the company would have to take on to finance the $51 per share payout. *Id.* at 1428. As noted above, both outside financial advisors recommended the revised Merrill offer over the earlier Merrill offer or the Edelman offer. The directors' decision was an informed one, made in good faith and with the honest belief that the action taken was in the best interest of the shareholders, *Aronson*, 473 A.2d at 812, and it is therefore entitled to a presumption of regularity.

Mr. Priddy also argues that the directors violated their fiduciary duties by approving a plan under which certain shareholders (the Edelman group defendants) stood to be reimbursed for claimed expenses, thereby realizing a higher per share return than other shareholders. This does not appear to be the basis of the breach of fiduciary duty claim alleged in the complaint, or even the basis on which the claim was fought out in the district court. But we cannot accept the argument in any event. In effect, Mr. Priddy argues that the directors were obligated, as fiduciaries, to reject the Merrill plan and wait to see if another offer

claims) are governed by Michigan law. Noting that the Michigan courts generally follow Delaware law in the absence of Michigan caselaw on particular corporate law issues, see, *e.g., Russ v. Federal Mogul Corp.*, 112 Mich.App. 449, 455 & n. 1, 316 N.W.2d 454, 457–58 & n. 1 (1982), the district court looked to Delaware law. 679 F.Supp. at 1430. The parties do not fault this approach.

came along under which all shareholders would be treated identically. We think the Michigan courts would be inclined to allow corporate directors considerable leeway in making such decisions. As we have already seen, it was by no means clear that any better offers would be forthcoming, given Fruehauf's sagging earnings and the mounting costs of the takeover battle. It seems to us that the directors acted within their considerable discretion in deciding to follow the counsel of their advisors, approve the Merrill offer, and avoid the risk of complete collapse of the bidding process. Our resolution of this question as a matter of Michigan corporate law has no bearing, of course, on the proper resolution of any federal securities law challenge to such an agreement.

Because summary judgment was appropriate on the underlying breach of duty claims against the directors, the related aiding and abetting breach of duty claims asserted against the other defendants necessarily fail as well.

### B

■ Mr. Priddy's complaint also seeks damages for alleged violations of the district court's earlier injunction, as modified by this court. Mr. Priddy had not specified precisely how the Fruehauf directors' actions are supposed to have violated the injunction. Throughout this litigation, the parties and the district court have treated the injunction violation claim as little more than a variation of the breach of fiduciary duty claim. This is hardly surprising, since the injunctive order amounts, in large part, to an elaboration of the scope of the directors' fiduciary duty to the shareholders. For example, the directors were "ordered to refrain from taking any corporate actions which are intended to or have the effect of favoring or advantaging any particular bidder over any other bidder" and "enjoined from any further breaches of their fiduciary duties to Fruehauf's shareholders in connection with the contest for control." 798 F.2d at 890–91. Having concluded that the plaintiff has no viable breach of fiduciary duty claim, we conclude, for substantially the same reasons, that he has no viable claim for breach of the injunction ordering the defendants not to violate their fiduciary duties.

### C

The original complaint also contained a breach of fiduciary duty claim against the Edelman defendants. The gist of this claim was that the Edelman defendants somehow violated a duty to other Fruehauf shareholders by accepting a higher per share price than the price received by their fellow shareholders.

■ At no time during 1986 did the Edelman group own more than 9.3 percent of the total outstanding Fruehauf shares. Mr. Priddy cannot claim, and we do not understand him to argue, that the source of the Edelman defendants' alleged fiduciary duty towards the other Fruehauf shareholders was the Edelman group's position as a majority or controlling shareholder. Minority shareholders owe no fiduciary duty to fellow shareholders. *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del. Ch.1984). Mr. Priddy asserts, rather, that:

> "The Edelman Group Defendants, by commencing litigation for the benefit of the Fruehauf shareholders, assumed a fiduciary role. They were not free to obtain a benefit for themselves to the detriment of the Shareholders."

This argument makes no sense; the interests of the two groups, as the district court observed, were "diametrically opposed." 679 F.Supp. at 1430. The Edelman group's lawsuit was commenced for the benefit of the members of that group, not for the benefit of the Fruehauf shareholders at large. The action was brought to further the Edelman group's end of acquiring a controlling block of Fruehauf shares at the lowest possible price. The interest of shareholders such as Mr. Priddy was to sell to the Edelman group or others at the highest possible price.

The sole authority cited by the plaintiff in this connection is *Young v. Higbee Co.*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945). *Young* was a bankruptcy case involving two creditors whose "sale" of their

right to appeal from the bankruptcy court's approval of a reorganization plan had the effect, under bankruptcy law, of barring other creditors from challenging the reorganization plan. *Young* does not apply where, as here, the settlement of a case by the plaintiffs would have no *res judicata* effect on other potential litigants. See *Pearson v. Ecological Science Corp.*, 522 F.2d 171, 178 (5th Cir.1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976). Because the Edelman group owed Mr. Priddy no fiduciary duty, the breach of fiduciary duty claim against the Edelman defendants was properly rejected by the district court.

### D

■ The complaint also alleged that the defendants had violated the "best price rule" of § 14(d)(7) of the Williams Act, 15 U.S.C. § 78n(d)(7), by paying the Edelman group shareholders more total consideration per share (counting the reimbursement for expenses as consideration) than other shareholders. On appeal, however, the plaintiff's opening brief framed the "best price rule" challenge exclusively in terms of the Rule 10b–13 claim asserted in the proposed amended complaint. Nowhere does the opening brief challenge the district court's summary judgment for the defendants on the § 14(d)(7) claim. The defendants reasonably interpreted this as an abandonment of the § 14(d)(7) claim and did not address the issue in their briefs. In his reply brief, the plaintiff asks the court to review the § 14(d)(7) claim "in light of the new authority" of *Field v. Trump,* 850 F.2d 938 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989), "and in furtherance of the interests of justice in this case." We normally decline to consider issues not raised in the appellant's opening brief. See *Wright v. Holbrook,* 794 F.2d 1152, 1157 (6th Cir. 1986). Under the circumstances of this case, we see no reason to depart from that policy.

### IV

■ We now turn to the district court's denial of leave to file an amended com-plaint. On July 21, 1987, the district court entered a pretrial order, pursuant to Local Rule XXI, establishing a "schedule controlling the progress of this cause." The order established a discovery cutoff date of September 21, 1987, a motion cutoff date of October 23, 1987, and a trial date of January 19, 1988. Separate motions for summary judgment were filed on behalf of the Edelman defendants and the Merrill defendants on October 23. Not until more than six weeks later—December 7, 1987—did Plaintiff Priddy move to amend his complaint.

In refusing to allow amendment of the complaint the district court made no explicit finding of undue prejudice, but no such finding is necessary where the extent of the prejudice the defendant would suffer is apparent from the record. See *Duchon v. Cajon Co.,* 791 F.2d 43, 48 (6th Cir.1986) (per curiam).

We believe the district court acted within its discretion in denying leave to amend. A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint. See *Addington v. Farmers' Elevator Mut. Ins. Co.,* 650 F.2d 663, 667 (5th Cir. Unit A July 1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); *Acri v. Int'l Ass'n of Machinist & Aerospace Workers,* 781 F.2d 1393, 1398–99 (9th Cir.1986), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986); *Jones v. Hamelman,* 869 F.2d 1023, 1026–27 (7th Cir.1989). Mr. Priddy waited nearly fifteen months after the filing of his original complaint before seeking leave to file an amended complaint based on precisely the same facts but asserting new theories of recovery. We agree with the Seventh Circuit that such "[s]ubstantive amendments to the complaint just before trial are not to be countenanced." *Feldman v. Allegheny International, Inc.,* 850 F.2d 1217, 1225 (7th Cir.1988). This is particulary true when the motion to amend is untimely

under the terms of the pretrial order, *Parker v. Joe Lujan Enterprises*, 848 F.2d 118, 121 (9th Cir.1988), and where no extension has been sought or explanation offered.

In complex cases such as this one, it is particularly important that the district court be allowed to enforce deadlines—and it is particularly likely that drastic amendments on the eve of trial will prejudice the defendants. We think it is clear that the wasted time and expense that would be entailed in conducting discovery, preparing summary judgment motions, and preparing for trial on an amended complaint justified the district court's denial of leave to amend. See *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160–61 (9th Cir.1989). Putting the defendants "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir.1973), *cert. denied*, 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974). We express no opinion on the merits of the claims asserted in the proposed amended complaint.

## V

█ Finally, we turn to the district court's approval of the settlement in No. 88–1867. In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion. See *Clark Equipment Co. v. Int'l Union, Allied Industrial Workers*, 803 F.2d 878, 880 (6th Cir.1986) (per curiam), *cert. denied*, 480 U.S. 934, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987). The fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement. *Id.* Our review of the district court's approval of the settlement in this case is governed by an abuse of discretion standard. *Id.*;

*Laskey v. Int'l Union (UAW)*, 638 F.2d 954, 957 (6th Cir.1981) (per curiam).

█ Of the various shareholders who objected to the settlement, only Mr. Priddy has appealed. Mr. Priddy concedes that across-the-board affirmance in *Priddy* would leave him with no viable challenge to the *Warshofsky* settlement. Having concluded that summary judgment in favor of the defendants was proper on Mr. Priddy's claims, we see nothing unfair or inequitable about the provisions of the *Warshofsky* settlement releasing such claims.

The motions to dismiss the appeal in No. 88–1299 are DENIED. In both Nos. 88–1299 and 88–1867, the judgment of the district court is AFFIRMED.