797 F.2d 79
 55 USLW 2138, Fed. Sec. L. Rep. P 92,851
 Geoffrey C. BEAUMONT, Stephen A. Kramer, and Adele Slutsky,
Plaintiffs- Appellants,
v.
AMERICAN CAN COMPANY, Gerald Tsai, Jr., Norman Alexander,
Gilbert Butler, Joseph Fafian, Jr., A. Leon
Fergenson, E. John Rosenwald, and
Stanley A. Zax, Defendants-Appellees,
Joseph Auerbach, Max Caplan, Frank T. Crohn, Ronald D.
Grimm, William A. Shea, Brian Yeowell, Defendants.
 No. 1039, Docket 85-9063.
 United States Court of Appeals,
Second Circuit.
 Argued April 3, 1986.
Decided July 24, 1986.
 
 Mordecai Rosenfeld, P.C., New York City and Alton I. Crowell, Newport Beach, California, for plaintiff-appellant Beaumont.
 Bruce E. Gerstein, New York City (Garwin Bronzaft & Gerstein, New York City, Scott W. Fisher, of counsel) for plaintiff-appellant Kramer.
 Kaplan Kilsheimer & Foley, New York City and Kohn Milstein Cohen & Hausfeld, Washington, D.C., for plaintiff-appellant Slutsky.
 Kenneth H. Holmes, New York City (Dewey, Ballantine, Bushby, Palmer & Wood, New York City, Ann M. Reed, of counsel), for defendant-appellee American Can Co.
 Michael Lesch, New York City (Shea & Gould, New York City, Alfred R. Fabricant, of counsel), for individual defendants-appellants.
 S.E.C., Washington, D.C. (Daniel L. Goelzer, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Thomas L. Riesenberg, Sp. Counsel, Leslie E. Smith, Atty., Paul Gonson, Sol., Washington, D.C., of counsel), amicus curiae.
 Before LUMBARD, OAKES, and NEWMAN, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Plaintiffs, former shareholders of Associated Madison Companies, Inc. appeal from the summary judgment of the Southern District (Lasker, J.), entered December 3, 1985, dismissing plaintiffs' Second Consolidated Amended Complaint against defendants American Can Company and Associated's directors and officers. The complaint alleged federal securities law and state corporation and contract law violations by American Can and Associated's directors and officers in connection with the April 8, 1982 merger of Associated into AC Financial Systems, a wholly-owned subsidiary of American Can.
 
 
 2
 We affirm.
 
 
 3
 On October 27, 1981, American Can and Associated reached an agreement in principle for a proposed merger. On that date, the companies signed a "Memorandum of Intent" under the terms of which holders of up to 49% of Associated common stock would receive $15 in cash for their shares and the remaining common stockholders would receive $15 worth of American Can shares. In addition, the Memorandum of Intent acknowledged that American Can was considering purchasing Associated shares on the open market or by other means prior to the merger.
 
 
 4
 American Can subsequently decided to purchase Associated stock from a number of institutional stockholders. It also decided to engage in a tender offer for its own stock to insure that it would have sufficient stock to exchange for Associated shares in the merger. Finally, American Can contemplated that it would permit holders of up to 49% of Associated's common stock to "elect", during the proxy solicitation for the merger, to receive cash or American stock for their shares.
 
 
 5
 On November 13 and November 20, 1981, American Can's outside counsel wrote to the Securities and Exchange Commission detailing the merger terms and requesting that the SEC declare the proposed pre-merger purchases, self-tender offer, and cash election feature of the merger exempt from SEC Rules 10b-6 and 10b-13.[1] The SEC granted the requested exemptions in two letters dated December 1 and December 24, 1981. Both of the Commission's letters contained a summary of the proposed merger terms and stated that the positions of the Commission were based solely on the facts and representations presented. In particular, the SEC granted the exemptions on the understanding that holders of Associated common stock would receive $15 in cash or American shares if the merger were approved, and that the institutions from whom American Can would make pre-merger purchases of Associated stock would not receive a price higher than that paid to the rest of the Associated shareholders in the merger. The SEC advised American Can to complete the pre-merger purchases and the self-tender offer before the mailing of the proxy materials and to disclose in the materials the pre-merger purchases' effect on the availability of cash election rights in the merger.
 
 
 6
 On January 7, 1982, American Can issued a press release in which it announced that it had agreed to buy 34% of Associated's outstanding common stock from five institutional investors. According to the release, American Can agreed to pay $13 in cash per share, and if the merger were completed at a higher price per share, American Can would pay the institutions an additional amount to match the merger price.
 
 
 7
 On January 12, 1982, American Can announced the tender offer for its own shares at a price of $33.50 per share. Also on that day, American Can and Associated issued a joint press release stating that the parties had amended the merger terms. Instead of insuring that holders of Associated common stock would receive $15 worth of American Can stock, the revised merger terms adopted a fixed exchange ratio of 0.4545 shares of American Can per share of Associated. This meant that the value of the exchange could be less than $15 depending on the market price of American Can shares at the time of the exchange. On February 23, 1982, the parties signed a final "Agreement and Plan of Merger" which included the revised merger terms. American Can never informed the SEC of the changes.
 
 
 8
 The Proxy Statement-Prospectus, sent to Associated shareholders on February 25, contained a description of the pre-merger purchases, the self-tender and the merger terms. The materials detailed Associated shareholders' right to elect whether they wanted to have their shares converted into $15 cash per share or into American Can stock at a ratio of 0.4545 per share of Associated. The proxy statement also disclosed that American Can's previous purchase of Associated stock from institutional holders had substantially reduced the cash available to the remaining Associated stockholders so that only from 8% to 15% of the stockholders would be able to receive cash. The proxy statement did not mention that American Can had sought and obtained exemptions from SEC Rule 10b-6 and no-action positions under Rule 10b-13 on the SEC's understanding that Associated common shareholders would receive $15 worth of American Can stock or $15 in cash for each share of Associated.
 
 
 9
 Associated's shareholders approved the merger on March 26, 1982. When the merger was consummated on April 8, 1982, approximately 8% of Associated's common shareholders received $15 in cash per share. The remaining Associated common shareholders received American Can stock valued at $12.61 per Associated share.
 
 
 10
 Plaintiffs commenced this class action on May 28, 1982 on behalf of former Associated shareholders who received American Can stock instead of cash in the merger. They seek to recover the difference between the value of the American Can stock at the time of the exchange and the $15 per share figure contemplated in the original merger negotiations and American Can's correspondence with the SEC.
 
 
 11
 Plaintiffs' Second Amended Consolidated Complaint alleges, inter alia, that American Can and Associated's directors and officers breached a "binding commitment" to the SEC that all holders of Associated common stock would receive $15 in cash or American Can stock in the merger and that the institutional investors would not receive a higher price per share than that paid other Associated shareholders. The complaint alleges further that defendants' failure to disclose these "conditions" of the 10b-6 and 10b-13 exemptions in the proxy statement constituted material omissions in violation of Sec. 14(a) of the Securities Exchange Act and SEC Rules 14a-9 and 10b-5.[2]
 
 
 12
 Plaintiffs moved for summary judgment and defendants cross-moved for the same relief. In a thorough opinion dated November 6, 1985, 621 F.Supp. 484, Judge Lasker denied plaintiffs' motion and granted defendants' motion. Judge Lasker held that the SEC-American Can correspondence did not create a binding agreement from which third-party benefits could inure to Associated's former stockholders. The judge also ruled that because plaintiffs had no right to demand compliance with the conditions of the SEC exemptions and no-action positions and were entitled to vote on the merger terms only in their final form, defendants' failure to disclose the SEC-American Can correspondence in the proxy statement did not constitute a material omission or render the rest of the proxy statement false and misleading. On December 3, 1985, Judge Lasker entered a Judgment dismissing plaintiffs' claims with prejudice, except for plaintiffs' state corporation law claim which was dismissed for lack of pendent jurisdiction.
 
 
 13
 This appeal followed. After briefing and argument, we requested, in a letter dated April 7, 1986, that the SEC file a brief as amicus curiae. We stated that the "views of the Commission would be especially appropriate in this case since the issues concern the significance of correspondence with the Commission in which exemptions were requested and granted." The SEC filed a brief on May 19, 1986, expressing its view that the 10b-6 exemptions and 10b-13 no-action positions were not material for purposes of disclosure in the proxy statement. We affirm for the reasons stated in Judge Lasker's opinion and the SEC's brief.
 
 
 14
 On appeal, plaintiffs renew their argument that the SEC-American Can correspondence placed binding obligations on American Can which plaintiffs are entitled to enforce under a third-party beneficiary theory. We are not persuaded. As Judge Lasker noted, the letters between American Can's counsel and the SEC bear none of the indicia of a contract. There was no offer or bargained-for exchange of promises in a contractual sense. Counsel merely sought guidance with respect to the proposed merger and the SEC advised that if American Can conducted its merger plans in the manner represented, it would regard the pre-merger transactions and the merger itself as within the law and thus not subject to prosecution. In no way did the correspondence obligate American Can to carry out the merger as proposed, although clearly American Can could no longer rely on the SEC's 10b-6 exemption or 10b-13 no-action position once it decided to amend the merger terms. We hold that there was no agreement between American Can and the SEC with respect to the merger that plaintiffs might enforce as third-party beneficiaries.
 
 
 15
 Plaintiffs maintain next that they are entitled to assert directly a private cause of action against American Can under SEC Rules 10b-6 and 10b-13 for the latter's alleged violations of those Rules. The Rules do not expressly provide for private actions and plaintiffs do not provide any support for implying a private right of action. This aside, we find dispositive the fact that plaintiffs did not raise any direct claim under 10b-6 and 10b-13 in the district court. They are therefore precluded from raising such claims for the first time on appeal. See Schwimmer v. Sony Corp. of America, 637 F.2d 41, 49 (2d Cir.1980).
 
 
 16
 In any event, it is unlikely that a claim under either Rule would succeed. Rule 10b-6 is designed to prevent a company engaged in a stock distribution, such as a merger, from affecting its stock's price artificially by trading in its stock during the distribution period. See Piper v. Chris-Craft Industries, 430 U.S. 1, 43, 45, 97 S.Ct. 926, 950, 951, 51 L.Ed.2d 124 (1977). There is no indication, however, that the American Can activities cited by plaintiffs--namely, American Can's pre-merger purchases of Associated stock and American Can's self-tender--artificially affected American Can's or Associated's stock price during the merger negotiations or the merger itself. As the SEC explained in its brief amicus curiae, because the purchases and self-tender were completed well in advance of the mailing of the proxy statement, it is doubtful that the activities had any impact at the time Associated shareholders were considering the merger. Indeed, the Commission opined that its staff would have renewed the 10b-6 exemptions had American Can informed it of the amended merger terms.
 
 
 17
 Plaintiffs' alleged 10b-13 action is also meritless. The Rule's purpose is to protect people who tender their shares pursuant to a tender offer by prohibiting the offeror from making "outside" purchases, i.e. purchases on terms different from those in the tender offer. See Pryor v. U.S. Steel Corp., 591 F.Supp. 942, 960-61 (S.D.N.Y.1984), rev'd on other grounds, 794 F.2d 52 (2d Cir.1986). Plaintiffs contend that the Rule prohibited American Can from purchasing the institutions' shares (which were convertible into American Can shares in the merger) while it was engaged in the self-tender offer. Even assuming, however, that such conduct constitutes a violation of 10b-13 and that there is an implied private right of action under that Rule, plaintiffs have no standing to complain. Plaintiffs are not among the class of persons intended to be protected by 10b-13--they did not tender stock in American Can's self-tender offer. Compare Warren v. Bokum Resources Corp., 433 F.Supp. 1360, 1367 (D.N.M.1977) (implied private right of action under 10b-13 accorded shareholders who tendered in response to a tender offer).
 
 
 18
 Finally, plaintiffs argue that the proxy statement omitted material facts in violation of Sec. 14(a) of the Securities Exchange Act and SEC Rules 14a-9 and 10b-5. They assert that whether or not they are entitled to enforce the terms of the SEC exemptions and no-action positions, they had the right to know, when voting on the merger proposal, that American Can originally sought and obtained the SEC's approval for the merger and pre-merger transactions on the representation that Associated shareholders would receive $15 worth of American Can stock in the merger. We disagree.
 
 
 19
 For an omitted fact to be material under Rule 14a-9, there must be a substantial likelihood that a reasonable shareholder would have considered the fact important in deciding how to vote. See TSC Industries Inc. v. Northway Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); see also Goldberg v. Meridor, 567 F.2d 209, 218-19 (2d Cir.1977) (materiality standard under Rule 10b-5 is the same as that under Rule 14a-9), cert. denied, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). Plaintiffs have made no showing that Associated shareholders would have considered information about the originally contemplated $15 per share figure important. Indeed, the shareholders voted overwhelmingly in favor of the merger despite the proxy statement's disclosure that they might receive less than $15 per Associated share while the pre-merger institutional sellers were guaranteed $15 per share.[3]
 
 
 20
 We agree with Judge Lasker that what was important for the Associated shareholders to know was the actual terms of the proposed merger, not the preliminary terms subsequently amended. Much discussion necessarily takes place in the course of any merger negotiation, and some of it may explore the possibility of a higher price for the shareholders than that offered in the final proposal. But if companies were forced to disclose all preliminary negotiations, proxy statements would become longer and more obtuse than they already are.
 
 
 21
 Plaintiffs nevertheless maintain that this case presents a strong argument for disclosure because the SEC was drawn into the preliminary negotiations and ultimately conditioned its approval of American Can's actions on the representation that Associated shareholders would receive $15 per share. The fallacy of this argument is that American Can was not "required" to follow-up on the terms of the SEC's exemptions. As we have stated, the exemptions were advisory, not binding contracts.[4]
 
 
 22
 The district court's judgment dismissing the complaint is affirmed.
 
 
 
 [1]
 SEC Rule 10b-6, 17 C.F.R. Sec. 240.10b-6, prohibits persons engaged in a "distribution" of securities from purchasing any such securities or any right to purchase such securities during the distribution. Because the acquiring company in a merger is deemed to be engaged in a distribution of its securities from the time it reaches an agreement in principle on the merger, American Can sought the SEC's approval of the self-tender (a purchase of securities in distribution) as well as approval of the pre-merger purchases of Associated shares and the cash election feature of the merger (the purchase of Associated shares constituting "right to purchase" American shares)
 SEC Rule 10b-13, 17 C.F.R. Sec. 240.10b-13, prohibits a tender offeror from making stock purchases other than pursuant to the terms of the offer. American Can's counsel wanted to make sure that the SEC would not label the cash election feature of the merger a tender offer separate from the merger itself and thus within 10b-13.
 
 
 [2]
 Plaintiffs also argued in the district court that: (1) American Can knew or should have known, but failed to disclose, that a one-time charge in the last quarter of 1981 would reduce American Can's earnings and the value of its stock at the time of the merger; (2) the cash election feature and the pre-merger purchases constituted tender offers, and therefore the plaintiffs are entitled to the same price as the institutional holders under sections 14(d) and 14(e) of the Williams Act, 15 U.S.C. 78n(d) and (e); and (3) the Memorandum of Intent itself created enforceable third-party rights in Associated shareholders
 Plaintiffs appear to have abandoned these claims on appeal--claims which the district court rejected--and we will therefore not address them.
 
 
 [3]
 The proxy statement revealed that only a small percentage of shareholders would be able to receive $15 in cash due to American Can's pre-merger purchases of Associated stock from the institutions. It further set forth the 0.4545 stock-for-stock exchange ratio and specifically urged Associated shareholders to consult market prices to determine what they would net in the merger if they did not receive cash. Thus, although the proxy statement did not explicitly state that most shareholders would receive less than $15 per Associated share, the shareholders were clearly advised of the way to compute what they would be getting for their shares. They voted on the merger with full knowledge of what the institutions had received
 
 
 [4]
 Of course, if by going outside the terms of the exemptions, American Can had manipulated stock prices in a manner prohibited by law, this could be material. This is the position of the SEC in its amicus brief; however, the Commission emphasized that it did not believe that American Can had manipulated the market price of its own or Associated's stock. The SEC thus concluded that the change in the merger terms and the American Can-SEC correspondence were not material for purposes of disclosure in the proxy statement. We agree and so hold