**Shelly A. JOHNSON and Wayne D. Johnson, Plaintiffs,**

v.

**NATIONWIDE GENERAL INSURANCE COMPANY, Nationwide Financial Services, Inc., Nationwide Life Insurance Company; and Nationwide Credit Union, Defendants.**

No. 94–CV–410.

United States District Court, N.D. New York.

Aug. 23, 1996.

Rossi, Murnane, Balzano & Hughes (Vincent J. Rossi, Jr., of counsel), Utica, NY, for plaintiffs.

Felt, Evans, Panzone, Bobrow & Hallak (E. Porter Felt, of counsel), Clinton, NY, for defendants.

## MEMORANDUM DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

This action was originally commenced in New York State Supreme Court—Oneida County. On March 29, 1994, it was removed to this court on the basis of diversity pursuant to 28 U.S.C. § 1332.

In her complaint, the plaintiff Shelly A. Johnson ("Johnson" or "plaintiff")[1] alleges three causes of action. In the First Cause of Action, the plaintiff alleges that on or about January 19, 1992, one Michael P. Donnelly

---

**1.** Neither side has addressed the claims of the plaintiff Wayne D. Johnson.

("Donnelly"), "agent either in fact or apparent, of the defendants" induced her to invest $70,000 in a Nationwide[2] tax free fund, and then misappropriated the money. In her Second Cause of Action, she alleges that the defendants were negligent in the employment of Donnelly. In the Third Cause of Action, the plaintiff alleges that she is entitled to the benefits of an assignment given by Donnelly to the defendant Nationwide Insurance Company.

The defendants have denied the material allegations in the complaint. In addition, they have raised affirmative defenses, including the termination of Donnelly as an agent effective September 20, 1991, plaintiff's notification of the termination, and that he was not an agent in January 1992, when he induced the plaintiff to invest.

Plaintiff seeks damages in the sum of $70,000 in her complaint. However, it is admitted that she was reimbursed by Donnelly in the sum of $15,000, and therefore her actual loss is $55,000 plus interest.

The defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56. The plaintiff has filed a response and a cross-motion for summary judgment. The defendants filed in opposition to the cross-motion. Oral argument was held on June 13, 1996, in Utica, New York. The court reserved decision.

## II. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P.

56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).[3]

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1355. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. *FACTS*

Donnelly was an employee of Nationwide from January 1976 through September 1991. Donnelly held many positions with Nationwide including sales agent, district manager, management training counselor at corporate headquarters in Columbus, Ohio, and financial plans advisor in Hartford, Connecticut.

In 1987, after several years of attempting to climb the management ladder, Donnelly decided to return to a position as a sales agent. During the next four years as an agent, Donnelly was twice given the "President's Award" for top company sales, an honor which Nationwide advertised in Time magazine. Donnelly's agency was also advertised on television, radio, and in newspa-

---

**2.** Neither side has specifically addressed the different roles of the four defendants. Therefore, in this opinion, unless otherwise indicated, the court will refer to the defendants collectively as Nationwide.

**3.** The facts have been set forth applying this standard to defendants' motion, in other words, most favorably to the plaintiff.

pers in the Hartford area where his agency was located.

Plaintiff had known Donnelly for approximately sixteen years. He was her brother-in-law, having been married to her sister, Mary A. Johnson. During all of that time, plaintiff was aware that he was a successful Nationwide agent.

In September 1991, Nationwide terminated Donnelly for improprieties relating to the handling of customer premium dollars. A form letter was allegedly sent to each of Donnelly's customers notifying them that Donnelly was no longer a Nationwide agent and giving them the name of an agent to call for future assistance. None of the actual letters or copies of any of the letters are in Nationwide's possession. Margaret Kelly ("Mrs. Kelly"), a Nationwide customer who is also plaintiff's mother and Donnelly's mother-in-law, never received one of these letters. Mrs. Kelly opened an account with Nationwide through Donnelly in 1988. Donnelly made unauthorized withdrawals and closed the account without Mrs. Kelly's permission in 1990, about one year prior to his termination. Therefore, it seems that only Donnelly's then existing customers were notified of his termination. No attempt to notify the general public was ever made.

Johnson received a personal injury settlement about November 1991. While at her house for Thanksgiving dinner, Donnelly talked with her about investing some of that settlement. He provided Johnson with a prospectus and an application for a tax-free Nationwide mutual fund, documents which were still in his possession from his time as a Nationwide agent. Donnelly also informed Johnson that he was a broker and could still sell for Nationwide. In January 1992, plaintiff provided Donnelly with $70,000 to be invested in the tax-free fund. Donnelly sent plaintiff an official receipt, together with a note on Nationwide letterhead acknowledging her investment. (Ex. 2, 3 attached to cross-motion Ex. B.) These documents, like the prospectus, were materials which Donnelly had inappropriately retained from his time as a Nationwide agent. Johnson later requested a withdrawal of $15,000 which she received along with a cumulative statement regarding the interest on her account prior to the withdrawal.

Johnson stated in her deposition that she was aware that Donnelly no longer worked exclusively for Nationwide at the time of the transaction in question. However, she also knew that Donnelly was still a broker, and believed that he was still able to sell Nationwide products. Plaintiff's sister and her mother, Mrs. Kelly, who lived with Donnelly at the time, provided her with no information to the contrary. Mrs. Kelly herself believed that she still had an account with Nationwide through Donnelly. As noted earlier, Mrs. Kelly was never given any information by Nationwide to change that belief. Johnson relied on Donnelly's ability to invest for Nationwide. However, in the fall of 1992, plaintiff inquired about a withdrawal which she had not received, and Donnelly admitted that he had embezzled her money. He never set up a Nationwide tax free account for her. Nationwide did not receive any of the money plaintiff gave to Donnelly. Moreover, the statements of account Donnelly provided to plaintiff did not come from Nationwide. Rather, Donnelly fabricated the account statements on blank Nationwide forms which he had retained.

Thereafter, Donnelly's Connecticut Insurance and Securities license was revoked. As a result of his transactions while a Nationwide agent, he was convicted of larceny in the first degree in the State of Connecticut in 1993. He was recently released after serving his sentence at a Connecticut state prison.

In April 1993, Donnelly attempted to assign his deferred compensation to Johnson because it was the only means he had to repay her for her loss. This deferred compensation is similar to a retirement fund into which Nationwide places money based on a percentage of an agent's yearly earnings. (Defs.' Ex. G ¶ 11.) However, Nationwide claimed that they were already entitled to use his deferred compensation to pay debts that Donnelly owed to the corporation. This authorization was supposed to come from an assignment form signed in December 1987. This court has ruled that this assignment was an expense recovery device primarily for the payment of license renewal fees. That

ruling is currently on appeal. However, Donnelly's employment agreements state that any assignment of compensation requires Nationwide's authorization. Nationwide has refused to authorize Donnelly's assignment to Johnson.

## IV. DISCUSSION

### A. First Cause of Action: Fraudulent Conversion or Misappropriation by an Apparent Agent.

Plaintiff's claim is that defendants are responsible for the funds lost because of Donnelly's improper actions under the guise of apparent authority. Defendants contend that they took all necessary action to eliminate any appearance of authority maintained by Donnelly, and therefore are not liable.

It is undisputed that Donnelly was an agent and Nationwide was his principal. He was well known and well regarded for his sales ability. It is also clear that Donnelly defrauded plaintiff of her funds after his termination by Nationwide. Therefore, in order to recover from Nationwide Johnson must show that Donnelly was still an apparent agent of Nationwide at the time her funds were fraudulently converted.

An agent is unable to create apparent authority solely by his own acts. *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir.1989). It has been held that "a principal causes his agent to have apparent authority by conduct which, reasonably interpreted, causes third persons to believe that the principal consents to have an act done on his behalf." *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda*, 877 F.2d 189, 193 (2d Cir.1989); Restatement (Second) of Agency § 27 (1958) (hereinafter "Restatement"). One court has held that three steps are involved in establishing apparent authority: "(1) the words or acts of the principal communicated to the third party made it reasonable to believe that the agent possessed the authority to act for the principal; (2) the third party relied on this reasonable belief; [and] (3) the third party made reasonable inquiries as to the ostensible agent's actual authority." *Peoples Westchester Sav. Bank v. Ganc*, 705 F.Supp. 164, 169

(S.D.N.Y.1989). However, more recently, the Second Circuit held that recovery under the theory of apparent authority does not require inquiry on the part of the injured party. *Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 995–996 (2d Cir.1991). Inquiry is only required where the circumstances of the transaction are extraordinary, making a failure to inquire unreasonable. *Id.* at 996. "The duty of inquiry amounts to an alternative way of asking whether the third party reasonably relied on the representations of the agent that he possessed the authority to bind the principal." *Id.*

#### 1. Nationwide's Actions

In the instant case there is no evidence or allegation suggesting that Nationwide took any direct action toward Johnson with the intent to defraud her of her money. The more important question in this case is whether Nationwide took sufficient action, including communications regarding Donnelly's termination, so as to eliminate any appearance that he had authority to represent Nationwide.

The duty of a principal to notify individuals upon the termination of an agent is not well documented in case law. At the very least, it seems a general rule that the customers of the agent must be notified and any indicia of authority such as business cards and official documents should be collected. It has been held that "[a]lthough the principal is entitled to have indicia of authority returned to him upon termination of the relation, if he is unsuccessful in accomplishing this the risk of the deception of third persons who have otherwise no notice of the termination rests upon the principal." *Id.* at 994; Restatement § 130.

Defendants claim that notices were sent to all of Donnelly's customers at the time of his termination. Defendants also attempted to retrieve Nationwide documents from Donnelly's possession after the agency relationship was discontinued. If Donnelly's termination was in the ordinary course for business reasons only, then Nationwide's actions may have been sufficient. However, this was not an ordinary or usual termination. Rather,

Donnelly was terminated because of fraudulent improprieties for which he was later criminally convicted and incarcerated.

When an agent is terminated for criminal activity during the course of his agency, all reasonable and practical actions and communications must be taken by the principal to assure that third parties are aware of the termination, and that the former agent has no authority to act for the principal in any shape, form or manner, and that it would be fraudulent for him to so act. The court has not found direct case authority to support or refute this holding. However, such a ruling serves to protect innocent third parties from unscrupulous former agents who originally were given actual authority by the principal. It does not place an unreasonable burden on the principal to require it to take such extraordinary or additional reasonable steps for the protection of third parties when agents are fired for fraudulent activity. A principal which meets this obligation not only protects itself from liability, but also considerably reduces the risk that innocent members of the general public will be defrauded by former agents.

Because Nationwide was aware of Donnelly's criminal fraudulent improprieties, they were required to make every reasonable effort to remove his apparent authority to represent the companies. This is particularly true where, as here, the former agency relationship was longstanding and widely known. The actions of Nationwide in terminating Donnelly are not sufficient to exonerate defendants, as a matter of law, from liability for his subsequent actions. Rather, questions of fact remain for the fact-finder regarding the reasonableness of Nationwide's conduct surrounding Donnelly's termination.

For example, a jury must first decide the nature and extent of Nationwide's knowledge of Donnelly's criminal activity, and then under those special circumstances, decide whether or not Nationwide made reasonable efforts to: (1) notify all of Donnelly's customers, both current and past (including Mrs. Kelly, and especially from 1987 through 1991) of the fact that he had been terminated; (2) collect all of the client files and documents in his possession which included Nationwide stationery and forms; and (3) notify the public of his termination. This is especially true in view of the fact that his success as an agent was widely publicized, yet according to the submissions in this case, his improprieties—and even his crimes— were publicly ignored.

The court finds that Nationwide, armed with the knowledge of Donnelly's criminal and improper actions toward customers as a direct result of his acting as an agent for the companies, had a duty to take additional reasonable steps to strip him of any apparent authority as an agent of the company. Whether or not Nationwide fulfilled this obligation, and did, in fact, make such reasonable efforts is a question of fact for the jury.

### 2. Plaintiff's Reasonable Reliance

Johnson was new to the world of investing when she received her personal injury settlement in 1991. Donnelly was a relative acclaimed for success in the field in which she needed help. This court finds that it is for a jury to decide whether the documents she received, and the information gathered from her sister and mother led her to reasonably rely on Donnelly's authority to invest her money in Nationwide's tax-free fund. Whether she had a duty to make reasonable inquiries must also be considered. See Herbert Constr. Co., 931 F.2d at 995–96. It must be determined if the situation was one which should have put Johnson on inquiry. Was she justified in her reliance on Donnelly's authority to represent Nationwide? Was it an extraordinary transaction? If it is found that Nationwide's actions were insufficient to remove apparent authority from Donnelly, did Johnson reasonably rely upon the authority which Nationwide was unable to eliminate?

A reasonable jury could make the preceding determinations in Johnson's favor. If so, the plaintiff's loss was caused by Donnelly's apparent authority. The existence of apparent authority would make Nationwide liable for Donnelly's actions toward Johnson. "[A] principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the

scope of his apparent authority." *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982). Therefore, summary judgment is not appropriate on the question of Nationwide's liability for Donnelly's acts because issues of material fact exist regarding his apparent authority, and the plaintiff's reliance thereon. These questions should be answered by a jury rather than by this court. Summary judgment to the defendants must be denied in regard to the First Cause of Action.

### B. Second Cause of Action: Negligent Employment

■■■■■ Respondeat superior requires an existing relationship between defendants and the person who committed the act. *Loucks v. Community Home Care Servs.*, 209 A.D.2d 484, 618 N.Y.S.2d 826 (2d Dep't 1994). Discharging an employee before the complained of act prevents recovery for negligent hiring and/or retaining. *Id.* at 485, 618 N.Y.S.2d 826. Defendants are not liable under this cause of action. Their dismissal of Donnelly prior to the improper actions which are the subject of this case is sufficient to relieve them of liability under this theory. Johnson's ability to hold Nationwide liable rests on her first cause of action. Therefore, summary judgment must be granted in the Second Cause of Action.

### C. Third Cause of Action: Assignment

■■■■■ Finally, Johnson claims that she is entitled to Donnelly's deferred compensation which he attempted to assign to her on April 10, 1993. It is undisputed that Donnelly and Nationwide had agreements requiring Nationwide's authorization or consent to any assignment of funds due to Donnelly. (Defs.' Ex. F ¶ 20, Ex. G ¶ 18.) Defendants argue that this requirement of consent defeats Johnson's cause of action relating to the assignment. "A party is bound by the provision of a contract he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir.1987). "An assignment is subject to the same requisites for validity as are other

contracts; i.e., mutuality of assent, proper parties with the capacity to make a contract, consideration and legal subject matter." *Lone Mountain Prod. Co. v. Natural Gas Pipeline Co.*, 710 F.Supp. 305, 309 (D.Utah 1989), *aff'd*, 984 F.2d 1551 (10th Cir.1992). Nationwide and Donnelly are the proper parties regarding this assignment. Without their participation and mutual assent, Donnelly's unilateral assignment to Johnson is invalid.

■■■■■ Johnson also does not have standing to enforce the attempt at assignment as a third party beneficiary. "Third party beneficiary rights arise, if at all, from a contract, and the contracting parties must have intended to confer a direct benefit on the third parties." *Beaumont v. American Can Co.*, 621 F.Supp. 484, 492 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 79 (2d Cir.1986). Whether relying upon federal common law or the law of New York, third parties only have enforceable rights in a contract if it was made for their direct benefit. *McNeill v. New York Hous. Auth.*, 719 F.Supp. 233, 248 (S.D.N.Y.1989). There is no indication that the 1987 and 1989 agreements between Donnelly and Nationwide were made for the direct benefit of Johnson. Therefore, Johnson is not a third party beneficiary of those agreements. Without the consent of Nationwide, Johnson has no standing to enforce the purported assignment by Donnelly to her. If Nationwide did authorize the April 10, 1993, assignment, plaintiff would be a direct third-party beneficiary and entitled to enforce a valid assignment. Such is not the case. The Third Cause of Action must be dismissed.

### D. Plaintiff's Cross–Motion

Viewing the facts in a light most favorable to Nationwide, the nonmovant, questions of material fact exist as to whether Donnelly was the apparent agent of Nationwide at the time he defrauded Johnson. Also, the plaintiff's reliance thereon must be assessed by a jury. Therefore, Johnson's cross-motion for summary judgment must be denied.

Accordingly, it is

ORDERED that

1. The defendants' motion for summary judgment is GRANTED in part and DENIED in part;

a. The First Cause of Action is not dismissed; and

b. The Second and Third Causes of Action are dismissed;

2. Plaintiff's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.