962 F.2d 1203
 Fed. Sec. L. Rep. P 96,637
 GRANADA INVESTMENTS, INC., Plaintiff-Appellee,
v.
DWG CORPORATION, et al., Defendants-Appellees.
DWG CORPORATION, Counterplaintiff and Third-Party Plaintiff-Appellee,
v.
GRANADA INVESTMENTS, INC., et al., Counterdefendants and
Third-Party Defendants-Appellees,
Fairview Financial Corporation, G.H. Enterprises, Inc.,
Peter F. Pellulo, Global Financial Corporation,
and Leonard Pellulo (91-3407/3399),
Third-Party Defendants-Appellants,
George P. Hellhake, Jessie B. Hellhake, and Paul R. Hellhake
(91-3407/3399), EGS Limited Partnership, Patrick C. Cestaro,
and Irving G. and Benice Brilliant (91-3297/3343/3402),
Objecting Shareholders-Appellants.
 
 Nos. 91-3297, 91-3343, 91-3399, 91-3402 and 91-3407.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 20, 1992.
Decided April 30, 1992.
 David B. Cathcart, Eli Manos (argued), Mansour, Gavin, Gerlack & Manos, Cleveland, Ohio, for defendants-appellees.
 Dennis J. Block (argued and briefed), Irwin H. Warren, Weil, Gotshal & Manges, New York City, Eli Manos, Mansour, Gavin, Gerlack & Manos, Norman S. Jeavons (briefed), Wayne C. Dabb, Thomas H. Shunk, Baker & Hostetler, Cleveland, Ohio, Lawrence A. Blatte, Kevin P. Groarke, Martin Rosen, Henry W. Hocherman, Rosen & Reade, New York City, Daniel P. Mascaro, Cleveland, Ohio, Paul P. Eyre, Cleveland Heights, Ohio, John P. Witri, Lakewood, Ohio, for DWG Corp.
 Frances F. Goins, Stacy D. Ballin, Alan P. Buchmann, Squire, Sanders & Dempsey, Eli Manos, Mansour, Gavin, Gerlack & Manos, Cleveland, Ohio, for Granada Investments, Inc., et al.
 Anthony G. Covatta (argued and briefed), Graydon, Head & Ritchey, Cincinnati, Ohio, for third-party defendants-appellants and George P. and Jessie B. Hellhake.
 T.S.L. Perlman (argued and briefed), Leonard Egan, Fort & Schlefer, Washington, D.C., for Irving G. and Benice Brilliant.
 Benito Romano (argued and briefed), Willkie, Farr & Gallagher, New York City, Carrie A. Foliano, Janik, Lester & Dunn, Cleveland, Ohio, for EGS Ltd. Partnership.
 Before: RYAN and SUHRHEINRICH, Circuit Judges, and CHURCHILL, Senior District Judge.*
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Granada Investments, Inc. offered DWG Corporation $572 million in an effort to merge the two companies. DWG declined the offer. What followed reflects both the complexity of securities lawsuits and the appetite for litigation exhibited by the parties.
 
 
 2
 Granada, beneficial owner of more than 5% of DWG's issued and outstanding common stock, brought a derivative suit against DWG and its directors, including Victor Posner. Posner is Chairman of the Board, President and Chief Executive Officer, and controlling shareholder of DWG. After Granada's complaint was twice amended, DWG counterclaimed and filed a third-party action.
 
 
 3
 Thereafter the parties spent many months attempting to work out a settlement. A compromise agreement was finally reached, allowing the litigants to avoid the precarious outcome of a trial on the merits. The district court found the settlement fair and we see no basis for disturbing this judgment.
 
 
 4
 * Granada's initial barrage of claims included breach of fiduciary duties owed by DWG directors to DWG shareholders, self-dealing by Posner, and manipulation by DWG directors of the stock market in violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.
 
 
 5
 DWG and Posner denied Granada's allegations and filed a counterclaim and third-party complaint, asserting that Granada and its investors used insider information to acquire a large block of DWG stock. It was further claimed that Granada contravened a host of federal securities laws, rules, and regulations.
 
 
 6
 Following discovery the parties undertook prolonged and laborious settlement negotiations. A stipulated settlement was reached on August 30, 1990 and approved preliminarily by the district court on September 18, 1990. A key element of the settlement was the dismissal with prejudice of all claims asserted or that could have been asserted by any of the settling parties. Another component of the settlement concerned changes in corporate governance. The agreement called for the district court to designate three new directors to DWG's board of directors. The new directors must have no business or familial relationship with any party to this action and shall serve on the audit and compensation committees of DWG.
 
 
 7
 The settlement also created a special committee consisting of the three new directors and two incumbent directors. The tasks of the special committee include review and approval of a) any incentive or bonus compensation payable to Victor Posner or his family, b) all intercorporate transactions of more than $500,000 involving DWG or its subsidiaries and any entity controlled directly or indirectly by Victor Posner, and c) rent increases authorized by DWG's lessor, a Posner-controlled trust.
 
 
 8
 The settlement further provided that DWG will hold annual shareholder meetings during each year that the stipulated agreement is in effect. Finally, under the terms of the settlement Granada may make application to the court for reimbursement of its legal costs and expenses up to $5.5 million.
 
 
 9
 A fairness hearing pursuant to Fed.R.Civ.P. 23.1 was scheduled for November 14, 1990 to provide a forum to any objecting shareholder. Notice of the proposed settlement was sent to shareholders of DWG on October 1, 1990. In addition, on October 15, 1990 summary notice appeared in the national edition of the Wall Street Journal and in the Cleveland Plain Dealer.
 
 
 10
 Thirty-one investors filed objections at the fairness hearing. Among the objections was that DWG received no monetary benefit from the settlement, the release of claims term was unduly broad and effaced the legitimate claims of DWG shareholders, Granada was not an adequate representative of DWG shareholders, and Granada's attempt to receive reimbursement costs was unfair. Undaunted by these and other objections, the district court concluded that the settlement was "fair, reasonable, adequate and in the best interests of DWG Corporation."
 
 II
 
 11
 We review the approval of settlements in shareholder derivative actions for abuse of discretion. In re General Tire & Rubber Co., 726 F.2d 1075 (6th Cir.), cert. denied, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); Priddy v. Edelman, 883 F.2d 438 (6th Cir.1989). Settlements are welcome in cases such as this because litigation is "notoriously difficult and unpredictable." Maher v. Zapata Corp., 714 F.2d 436, 455 (5th Cir.1983) (quoting Schimmel v. Goldman, 57 F.R.D. 481, 487 (S.D.N.Y.1973)). Absent evidence of fraud or collusion, such settlements are not to be trifled with. Priddy, 883 F.2d at 447.
 
 
 12
 Relevant factors framing our inquiry include the likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by class members. See Officers for Justice v. Civil Service Commission of San Francisco, 688 F.2d 615, 625 (9th Cir.), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). The district court enjoys wide discretion in assessing the weight and applicability of these factors. Maher, 714 F.2d 436 at 455.
 
 
 13
 This appeal boils down to a claim by objecting shareholders that the settlement was not sufficiently beneficial to them. The shareholders pursue this argument along two paths. One, they charge Granada and DWG's directors with impropriety and self-interested action. Two, the objectors challenge the district court's computation of Granada's costs.
 
 
 14
 * The objecting DWG shareholders assert that Granada, Posner, and other defendants are afflicted by conflicts of interest fatal to the fairness of the settlement. They claim that the settling parties were so busy tending to their own interests that nobody protected DWG's shareholders. The result is described as a "parody of a settlement" providing no real benefit to DWG or to its shareholders.
 
 
 15
 As we observed in Priddy, the fact that one of the parties "might have received more if the case had been fully litigated is no reason not to approve the settlement." Priddy, 883 F.2d at 447. A settlement is after all a compromise, reflecting real concessions on all sides. The pursuit of self-interest by Granada or Posner does not preclude additional benefit to DWG's shareholders.
 
 
 16
 In fact, the terms of the settlement offer substantial benefit to DWG and its shareholders. Admittedly, the fairness of a settlement is more difficult to determine when nonpecuniary benefits are provided to the corporation. Nonetheless, DWG was released from all liability based on claims that might have been asserted by Granada. In addition, the settlement called for changes in corporate governance. Against the background of a Posner-dominated board, the settlement provided for three new strategically placed directors and for a new special committee with oversight powers.
 
 
 17
 One of the new directors chairs the audit committee and another serves as chair of the compensation committee. The three new directors comprise a majority of the special committee, whose function is to monitor the compensation to and transactions of Victor Posner. Mindful of the fact that DWG paid Posner a bounty of over $27 million in salary and bonuses between 1985 and 1989, and that during the same period Posner-controlled entities received loans, advances, and common cost payments from DWG in excess of $43 million, it is not far-fetched to consider governance changes aimed at limiting DWG's disbursements to Posner as genuinely beneficial.
 
 
 18
 Objection is also made to the settlement provision releasing all parties from future liability. The district court said the release provision was "entirely understandable if this action ever is to be settled." DWG's shareholders, by contrast, consider the release an unwarranted sacrifice of legitimate claims potentially brought by shareholders.
 
 
 19
 The breadth of releases does not alone establish unfairness. Maher, 714 F.2d at 459. The individual components of an agreement are to be evaluated in light of the settlement as a whole. Armstrong v. Board of School Directors, Inc., 616 F.2d 305, 315 (7th Cir.1980). The shareholders assign unfairness to the release provision because some future claim might be barred. No specific claim is identified, nor is any future litigant named. Due to the speculative nature of this objection and the limited character of appellate review of settlements, we do not find that the district court abused its discretion in approving the release provision. See Schlensky v. Dorsey, 574 F.2d 131 (3d Cir.1978).
 
 
 20
 The objectors' reliance on National Super Spuds v. N.Y. Mercantile Exchange, 660 F.2d 9 (2d Cir.1981), does not persuade us otherwise. DWG's shareholders emphasize National 's warning regarding the pitfalls of settlements containing broad release provisions: "An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class." National, 660 F.2d at 19.
 
 
 21
 This argument overlooks that National 's reasoning is expressly limited to class actions. National does not apply to derivative suits. Id. at 19 n. 10 ("Derivative suit settlements releasing claims not asserted in the complaint are also distinguishable from the settlement here because the derivative plaintiffs and other shareholders ordinarily have a common interest ... in any unpleaded claims being released."). The objectors ignore the ratio decidendi of National, which is anchored in "the fundamental difference between derivative suits and class actions." Id. at 18. Granada correctly points out that the releases contested here do not apply to parties who were unrepresented during the settlement negotiations. In fact, National 's distinction between derivative suits and class actions directs us to rely on Schlensky, which favors a finding that the release of claims was proper.
 
 B
 
 22
 The district court determined that the settlement offered a potential savings of $108 million to DWG and its shareholders. The court apparently arrived at this figure by considering the anticipated impact of the corporate governance changes in the light of carnivorous corporate conduct at DWG during the last few years. For example, DWG suffered losses of approximately $30 million between 1986-1989 for loans and other transactions made with Posner's companies. The settlement provides for the special committee to approve all loans in excess of $500,000 to Posner entities. DWG can reasonably anticipate saving about $40 million during the five-year life of the settlement from this governance change alone.
 
 
 23
 Another element of the settlement calls for the special committee to review all compensation paid to Posner or his family members. In 1989 Posner was paid a bonus of $9,150,000. The special committee's power to eliminate such munificence in each of the five years of the settlement's life represents a potential savings of $45 million.
 
 
 24
 Based on the projected savings of about $108 million, the district court issued an award of $3,100,638.42 for attorneys' fees and expenses, $323,131.16 for expenses related to the acquisition of non-legal trial consultants, $930,000 for financial advice, and $25,000 for travel and associated expenses. The total is approximately $4.3 million, or 4% of the anticipated savings to DWG provided by the settlement.
 
 
 25
 The DWG shareholders submit that Granada was improperly awarded for "private costs" and that Granada's award for attorneys' fees was unsupported by evidence of reasonable hourly rates.
 
 
 26
 Paragraph 7 of the stipulated settlement provides:
 
 
 27
 At any time following the date of the execution of this Stipulation, Plaintiff may make an application to the Court for costs as set forth in Exhibit E hereto (including, but not limited to, costs and disbursements incurred by Plaintiff arising solely on account of services rendered by Squire, Sanders & Dempsey (the "SS & D Costs")) up to an aggregate amount of $5,500,000 (the "action Costs"). The amount to be paid shall be in the sole discretion of the Court.
 
 
 28
 The explicit terms of the settlement provide for costs "not limited to" the legal services supplied by Granada's attorneys. DWG's shareholders invoke Trustees v. Greenough, 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1882), to support a prohibition on reimbursement for "private costs," including costs relating to personal expenses. In Greenough, the Supreme Court examined the propriety of an award of costs and expenses made out of a trust fund to Francis Vose, one of the fund's creditors. Vose submitted a bill of $34,192.62 "for fees of solicitors and counsel, costs of court, and sundry small incidental items for copying records and the like." Id. at 530. Vose also requested "attorneys' fees for resisting fraudulent coupons, and expenses paid to attorneys and agents to investigate fraudulent grants of the trust lands, amounting in all to $19,745.68." Id.
 
 
 29
 Quite apart from the expenses incurred relating to litigation, Vose sought $34,625 for personal services undertaken to improve the health of the trust. In addition, Vose asked to be reimbursed for personal expenditures of $15,003.35. The Supreme Court separated Vose's litigation expenses from his personal costs. The Court noted that "it is well understood that costs as between solicitor and client include all reasonable expenses and counsel fees." Id. at 533. The Court disallowed only the cost of personal services and private expenses. Vose's remaining costs were paid in full.
 
 
 30
 DWG's shareholders attempt to liken Granada's costs to the "private costs" disallowed in Greenough. In fact, all costs for which Granada was reimbursed related to advancing the litigation. The money spent on accountants and investment bankers was related to the claims pursued by Granada on behalf of all DWG shareholders. This expenditure was not "private" in the sense found objectionable in Greenough. Also, under Greenough, "[t]he court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have." Id. at 537.
 
 
 31
 The objecting shareholders also protest Granada's failure to provide supporting evidence of reasonable hourly rates. DWG's shareholders apparently do not challenge the reasonableness of the final bill for legal services. Rather, they object to the absence of evidence relating to rates per hour. In Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Supreme Court observed:
 
 
 32
 The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. (emphasis added)
 
 
 33
 Hensley does not mandate a particular form of proof for considering the reasonableness of legal fees. All that is necessary is "evidence supporting the hours worked and rates claimed." Id. The district court was satisfied with the evidence provided by Granada and this judgment was well within its discretion.
 
 
 34
 Lastly, the objecting shareholders ask us to modify the district court's award to Granada by describing the award as a disallowance of $1.1 million based on the objections of DWG shareholders. The district court rejected such a revision, adding that "no disallowance of costs to Granada occurred as proclaimed by" the objecting shareholders.
 
 
 35
 If the shareholders persuade us to recharacterize the award, then they are entitled to seek reimbursement for legal fees for their work in securing the $1.1 million benefit. But where the district court is within its discretion in expressly rejecting a reason advanced by the objectors, it is not appropriate for an appellate court to supply what the court below so categorically repudiated.
 
 III
 
 36
 Finally, the objectors contend that Granada did not adequately represent the class of DWG shareholders. Rule 23.1 provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."
 
 
 37
 We have previously identified several facts which, if present, suggest inadequate representation. Davis v. Comed, Inc., 619 F.2d 588, 593-94 (6th Cir.1980). These facts include antagonistic economic interests between the representative and the class, vindictiveness on the part of the plaintiff, and evidence that the named plaintiff is not in fact the moving force behind the litigation. Id.
 
 
 38
 Applying Davis, the objecting shareholders have fallen considerably short of establishing the existence of any of the relevant facts in this case. The shareholders offer little more than conclusory remarks in support of their allegation of inadequate representation. Granada and the class share a common concern as to the breach of fiduciary duties or securities regulations by DWG. These shared interests are not vitiated by Granada's additional stake in the merger offer. We agree with the district court that "there is sufficient community of interests, as well as an absence of potential conflict of interests, to ensure that plaintiff will serve adequately as a representative of DWG shareholders." Granada Investments, Inc., v. DWG Corporation, 717 F.Supp. 533, 539 (N.D.Ohio 1989).
 
 IV
 
 39
 Securities laws do not protect shareholders from every risk or bad judgment associated with an investment. The district court's analysis of the settlement's fairness properly examined Granada's likelihood of success on the merits, the complexity and expense of the litigation, and the objections of DWG shareholders. The district court's approval of the settlement and the award of costs to Granada are affirmed.
 
 
 
 *
 The Honorable James P. Churchill, United States Senior District Judge for the Eastern District of Michigan, sitting by designation