*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0266P (6th Cir.)
File Name:  01a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIAM P. MCDANNOLD, et al.,
        *Plaintiffs-Appellees,*

        *v.*

STAR BANK, N.A.; JOHN ENDRES; JOYCE L. RICHTER; THOMAS A. SIMONS, JR.; GRAYDON, HEAD & RITCHEY,
        *Defendants-Appellants,*


LINDHORST & DREIDAME; WILLIAM KIRKHAM; GRADISON & CO., INC.,
        *Defendants-Appellees,*

WILLIAM J. HARE, et al.,
        *Defendants.*

Nos. 99-3497; 00-3461


Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No.  94-00002—Walter H Rice, District Judge.

1

Argued:  February 1, 2001

Decided and Filed:  August 13, 2001

Before:  MERRITT and COLE, Circuit Judges; HOOD,
District Judge.[*]

———————————

**COUNSEL**

**ARGUED:**  Thomas R. Schuck, TAFT, STETTINIUS &
HOLLISTER, Cincinnati, Ohio, for Appellants.  Stephen M.
Perry, CASNER & EDWARDS, Boston, Massachusetts, for
Appellee.  Michael Schloss, U.S. DEPARTMENT OF
LABOR, OFFICE OF THE SOLICITOR, Washington, D.C.,
for Amicus Curiae. **ON BRIEF:** Thomas R. Schuck, Marcia
E. Andrew, TAFT, STETTINIUS & HOLLISTER,
Cincinnati, Ohio, John W. Hust, Michael E. Maundrell,
SCHROEDER, MAUNDRELL, BARBIERE & POWERS,
Cincinnati, Ohio, David C. Greer, BIESER, GREER &
LANDIS, Dayton, Ohio, for Appellants.  Stephen M. Perry,
CASNER & EDWARDS, Boston, Massachusetts, Judith
Boyers Gee, Covington, Kentucky, R. Gary Winters, Clement
J. DeMichelis, McCASLIN, IMBUS & McCASLIN,
Cincinnati, Ohio, James E. Burke, III, Daniel E. Izenson,
KEATING, MUETHING & KLEKAMP, Cincinnati, Ohio,
for Appellees.  Michael Schloss, U.S. DEPARTMENT OF
LABOR, OFFICE OF THE SOLICITOR, Washington, D.C.,
for Amicus Curiae.

———————————

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

the decision of the District Court denying Star Bank's claim to the fund as proceeds of the pledged collateral.

As to No. 00-3461, we VACATE the decision of the District Court and REMAND for a determination of possible nonfiduciary liability under *Harris Trust* as affecting appellants' claimed right of contribution. We express no view as to the existence of that right or the need for an evidentiary fairness hearing. The District Court should determine, in the first instance, how *Harris Trust* affects appellants' theory of common liability and whether it supports their claimed right to contribution. Because the issue of nonfiduciary liability remains undecided, we do not reach appellants' challenge to the structure of the set-off or the adequacy of the settlement in this case. We note only that, were the settling defendants also potentially liable under ERISA for their role in this transaction, all aspects of the settlement should be reevaluated for their fairness and adequacy as to settling and non-settling defendants alike.

————————————

## OPINION

————————————

MERRITT, Circuit Judge. Though this combined appeal raises detailed questions of secured transactions and employee benefits law, the issue is easily stated. We must decide how to distribute $1.75 million in settlement monies claimed by plaintiffs and a secured creditor and what effect, if any, the fund should have upon the non-settling defendants. In No. 99-3497, Star Bank, as the secured creditor, claims the settlement fund as "proceeds" from its loan to the plan. In No. 00-3461, appellants are the non-settling defendants who continue to object to the form and effect of the settlement.[1] We **AFFIRM** the decision on the issue of proceeds but **VACATE** the court's approval of the settlement and **REMAND** for further consideration of a possible right to contribution and the overall fairness of the settlement and set-off in light of new Supreme Court authority.

### I.  FACTS

In 1987, John Endres decided to sell his interest in Electro-Jet Tool & Manufacturing, an aerospace machine shop that he founded and long managed. After fruitless negotiations with a Canadian firm, he agreed to sell his 82.5% stake in Electro-Jet to the company's own employees. As part of the transaction, the then-existing profit sharing plan was converted into an employee stock ownership plan ("the ESOP" or "the plan"), as defined in the Employment Retirement Income Security Act of 1974. *See* 29 U.S.C. § 1107(d)(6). To finance the $12.5 million purchase, the plan contributed $2.3 million of its own pension assets and obtained a non-recourse loan of $10.2 million from Star Bank,

————————————

[1] The appellants are all defendants and third-party defendants to the ERISA suit, with the exception of certain former Electro-Jet executives who did not join in this appeal.

then known as The First National Bank of Cincinnati. The bank was secured, among other collateral, by a pledge of 268,000 shares in Electro-Jet, that portion of stock purchased with the loan amount. Star Bank perfected its interest by taking possession of the shares, which apparently it still retains.

Litigation ensued when plaintiffs discovered that the shares they bought were worthless—and, according to plaintiffs, were essentially worthless at the time of the transaction. Plaintiffs, the trustee and beneficiaries of the plan, claim that the $12.5 million purchase price for the Electro-Jet stock was grossly overvalued. Plaintiffs note that quality control problems led Electro-Jet's largest customer, General Electric, to significantly reduce its orders. As a result, plaintiffs allege, Electro-Jet sales for the last three calendar months of 1987 were one half that of the previous year's. According to plaintiffs, no independent audit was conducted of financial statements for the fiscal year ending September 30, 1987, though by then the company was operating at a loss from which it never recovered.

Plaintiffs assert that they knew none of this. They claim that Endres and the officers of Electro-Jet kept these operating losses secret while negotiating the buyout. They further claim that Star Bank, as former trustee of the plan, failed to investigate or bring any action on behalf of the plaintiffs once the losses were discovered. Plaintiffs sued Endres, Star Bank, and several former Electro-Jet executives for breach of fiduciary duty under ERISA. Endres, in turn, named as third-party defendants his lawyer, Thomas A. Simons, and Simons' former law firm.

Plaintiffs also sued the professional advisors whom the plan retained to structure the transaction. This second set of defendants—collectively, the "settling defendants"—consists of William Kirkham, who represented the plan during the buyout; Kirkham's firm, Lindhorst & Dreidame; and Gradison & Company, a consulting firm that furnished an

disgorgement was unavailable as against them. As a form of equitable relief, however, disgorgement is allowed under *Harris Trust*. 530 U.S. at 250 (describing the statutory term "appropriate equitable relief" by reference to trust law). On remand, should the District Court find that *Harris Trust* raises the possibility of nonfiduciary liability in this case, the settlement agreement would then fail to reflect the full damages equally available against all defendants. Whether that fact renders the agreement unfair either as to plaintiffs or appellants is a matter we leave to the District Court.

## B.   Allocation of Costs on Appeal

In No. 99-3497, costs will be taxed against appellant Star Bank in accordance with Fed. R. App. P. 39(a)(2). In No. 00-3461, the appellants have filed a motion to impose the cost of the appendices on the appellees, arguing that they have included unnecessary parts of the record. As we remand the case for further proceedings and undoubtedly additional expense for all parties, we see no reason to depart from the default position of Fed. R. App. P. 30(b)(2), which requires the appellant to pay for the appendices. Even if, taken together, the appendices for this appeal span four volumes for 2211 pages—with a few duplicative designations—we find no part profligate or wholly unnecessary. We therefore order that the appellants pay the cost of producing the appendices. All other costs in No. 00-3461 are to be borne by the parties themselves.

## V.   CONCLUSION

As to No. 99-3497, we conclude that the plan's financial and legal advisors were responsible for the quality of their work, but not for the devaluation of the Electro-Jet stock itself. The malpractice settlement accordingly compensated plaintiffs for deficient professional services rather than damage to company stock, whose true value had already declined. Because the settlement did not affect the ownership of the pledged stock or result in its disposition, we AFFIRM

no right of contribution, the court observed, the non-settling defendants were not entitled to a hearing.

As previously discussed, however, the basis for that conclusion has since been modified by *Harris Trust*. To the extent *Harris Trust* supports common liability and a right to contribution in this case, the District Court should reassess the fairness and sufficiency of the set-off as to the non-settling defendants. *See In Re Masters Mates & Pilots*, 957 F.2d at 1032 (describing the various forms of set-off but reversing imposition of a settlement bar because no inquiry was made into the parties' relative fault and the adequacy of the settlement as to appellant's lost right of contribution).

## IV.  OTHER CLAIMS

### A.  Adequacy of the Settlement

Pursuant to Fed. R. Civ. P. 23.1, the District Court approved the settlement agreement as fair, reasonable, and adequate as to the plaintiffs and plan participants. Appellants contend that the court abused its discretion because it did not determine the total value of the case in relation to $1.75 million settlement. With claims dismissed against the settling defendants, appellants protest that they are left with a fixed $1.75 million set-off against a ballooning liability. We do not agree, however, that the District Court erred by giving only general ranges for the potential recovery against the defendants. As we have previously noted, the District Court enjoys wide discretion in evaluating the settlement of derivative actions under Rule 23.1. *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). We find the court's analysis of the settlement figures to be carefully considered and informed by a hearing at which all parties were present.

We do note, however, that our remand for reconsideration in light of *Harris Trust* might affect the District Court's appraisal of the settlement. Because the settling defendants were nonfiduciaries under ERISA, the court concluded that

appraisal of the Electro-Jet stock. Claiming malpractice and misrepresentation under state law, plaintiffs alleged that these legal and financial advisors failed to represent the plan properly by using incomplete appraisals and financial reports that did not reveal the extent of Electro-Jet's losses.

Here, we need not consider the merits of either the ERISA or the malpractice claims. While the former await further proceedings in District Court, the latter eventually settled for $1.75 million. Instead, we narrow our focus to the malpractice settlement fund, whose distribution has been stayed until resolution of this appeal. Our task is twofold: We must decide whether a secured creditor is entitled to the settlement as "proceeds" of a stock pledge and what effect, if any, the settlement should have upon the on-going litigation between plaintiffs and the remaining defendants.

## II.  SETTLEMENT FUNDS AS PROCEEDS
### (No. 99-3497)

As secured creditor to the transaction between Electro-Jet and the employee benefit plan, Star Bank took possession of company stock as collateral for its $10.2 million loan. Following plaintiffs' settlement of the malpractice claims, Star Bank claimed an interest in the resulting fund as proceeds of the pledged stock. The District Court denied the bank's motion for partial summary judgment on this claim, and this appeal followed. Star Bank argues that the District Court misinterpreted both the stock pledge agreement and Ohio law, which the parties agreed would govern their transaction. We disagree with the bank and affirm the judgment of the District Court.

Under ERISA, Congress sought to protect plan assets by placing narrow restrictions on the types and terms of stock purchase transactions in which plans may engage. *See* 29 U.S.C. §§ 1106-1108 (prohibiting certain transactions with benefit plans and outlining stringent exemptions). One such limitation circumscribes the plan assets that may be placed at

risk as collateral: "No person entitled to payment under the exempt loan shall have any right to assets of the ESOP other than: (1) collateral given for the loan, (2) contributions (other than contributions of employer securities) that are made under an ESOP to meet its obligations under the loan, and (3) earnings attributable to such collateral and the investment of such contributions." 29 C.F.R. § 2550.408b-3(e). Star Bank and the employee plan expressly incorporated this restriction in their loan agreement, and Star Bank does not contest its applicability now. J.A. 775. Accordingly, the bank must fit the settlement fund under one of these three headings for its interest to attach.

Star Bank briefly argues that the settlement fund can be considered "earnings" attributable to the Electro-Jet stock. This assertion, made without citation or legal support, is not well-taken. The term "earnings" generally describes income obtained from the performance of labor, the provision of services, the sale of goods, or gain from investment. *See* Black's Law Dictionary 509 (6th ed. 1990). In other words, earnings flow from deliberate and productive use of resources, not, as is alleged in this case, the malfeasance of others. Plaintiffs' settlement of their malpractice claims clearly does not constitute "earnings" on the stock.

In the alternative, Star Bank argues that the settlement fund constitutes "collateral" to the loan. Although the pledged stock still remains in the bank's possession, Star Bank contends that its interest in the collateral also reaches any traceable proceeds. Under the Uniform Commercial Code as adopted in Ohio at the time this action was commenced, it is true that an interest secured by collateral continues in any "identifiable proceeds" of that collateral. Ohio Rev. Code § 1309.25(B). The question, then, is one of characterization: whether the settlement fund constitutes proceeds of the stock subject to a continued security interest. Under the version of the statute that governs this case, the term "proceeds"

contribution. We are loath to undertake this inquiry now, as significant factual questions remain. The record does not indicate whether this was a prohibited transaction under ERISA or whether the settling defendants received plan assets now subject to restitution, disgorgement, or other equitable relief. Plaintiffs contend in their brief that Kirkham, Lindhorst & Dreidame, and Gradison never received plan assets, while at oral argument counsel for appellants asserted that this was an unresolved factual question. Nor does the record show whether the settling defendants were parties-in-interest or the extent of their knowing participation in the alleged breach of fiduciary duties. For these and other questions newly raised by *Harris Trust*, we remand to the District Court.

## B.    Form of the Set-Off

According to the settlement agreement, the $1.75 million fund reduces the liability of the non-settling defendants on a *pro tanto* basis. The non-settling defendants objected to the form of this set-off, arguing that they are entitled to a fairness hearing as to the nature and amount of the judgment credit. They maintain that their liability should be reduced according to the proportionate fault of the parties. Over these objections, the District Court endorsed the settling parties' method of judgment reduction. Ordinarily, this decision would have triggered a hearing to determine whether the settlement and set-off were fair to the non-settling defendants. *See In re Jiffy Lube Sec. Litig.*), 927 F.2d at 160 n.3 (noting that the *pro tanto* method of judgment reduction "exposes the non-settling defendant to liability for any deficiency in the judgment, so a hearing focussing on [the] fairness of the settlement to the non-settling defendants is required for approval"). Here, the District Court assumed that the settling defendants, as nonfiduciaries, were not liable under ERISA and therefore not subject to claims of contribution. *McDannold v. Star Bank*, 1999 U.S. Dist. LEXIS 22158, at * 29 (S.D. Ohio June 3, 1999). Because the settlement barred

nonfiduciary.  *See Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988).

Extrapolating from *Harris Trust*, the appellants argue that a party's status as a fiduciary or nonfiduciary no longer matters in determining liability under ERISA.  This reading overlooks the limiting principles of that case.  First, as the Court pointed out, any recovery against a nonfiduciary under § 503(a)(3) is confined to "appropriate equitable relief."  *Harris Trust*, 530 U.S. at 250.  This may include, *inter alia*, restitution of wrongfully obtained plan assets or profits.  This does not, however, include legal relief.  *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993) (holding that ERISA does not permit a cause of action against nonfiduciaries for the recovery of damages).  *See also Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 552 (6th Cir. 1998).  Second, a nonfiduciary is liable only for its "knowing participation" in a fiduciary's breach.  *Harris Trust*, 530 U.S. at 248.  Third, at least on the facts of *Harris Trust*, liability was premised on the nonfiduciary's role as a party-in-interest to the prohibited transaction, though the Court's rationale would seem to apply to other nonfiduciaries as well.  Id. at 249.

Despite these limitations, *Harris Trust* supports appellants' claim that a party's nonfiduciary status is not always determinative of liability under ERISA.  We recognize that, even were settling and non-settling defendants to share liability under ERISA, a right to contribution would not necessarily follow.  *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981) ("Nor does the judicial determination that defendants should be jointly and severally liable suggest that courts also may order contribution, since joint and several liability simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants.").  Here, however, the District Court did not have an opportunity to apply *Harris Trust* to the facts of this case and naturally did not address whether the parties shared liability under ERISA and how such common liability might affect a right to

includes whatever is received upon *the sale, exchange, collection, or other disposition* of collateral or proceeds.  Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.  Any payments or distributions made with respect to investment property collateral are proceeds.

Ohio Rev. Code § 1309.25(A) (emphasis added).  In applying this definition to the facts, we observe that the settlement fund cannot represent "payments or distributions" on investment property for the same reason it cannot be considered "earnings," as discussed.  If Star Bank is to prevail, it must show a "disposition" of the stock from which plaintiffs received the settlement fund.[2]

A disposition is marked by "the parting with, alienation of, or giving up of property."  Black's Law Dictionary 471 (6th ed. 1990).  Though Star Bank acknowledges that it still retains possession and ownership of the pledged Electro-Jet shares, it maintains that the satisfaction of plaintiffs' malpractice claims in settlement represents a "disposition" of the stock from which the $1.75 million fund flows as

---

[2]We note that the revised version of Article 9 of the Uniform Commercial Code might well require a different analysis.  *See* G. Ray Warner, *Lien on Me:  The Right to Proceeds Under Revised Article 9*, AM. BANKR. INST. J. 2001 ABI JNL. LEXIS 10, at *7 (2001) (noting how the revised Article 9 expands the concept of disposition to include property that originates from, but need not replace, the underlying collateral).  In adopting the revised Article 9, the Ohio General Assembly has recently amended the definition of "proceeds" to also include, *inter alia*, "rights arising out of collateral" and, "to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to the collateral."  Ohio Rev. Code § 1309.102(A)(64).  Here, however, we must apply the former version of the Ohio commercial code and its definition of proceeds found at Ohio Rev. Code § 1309.25(A).  *See* Ohio Rev. Code § 1309.702(C) (noting that the recent revision of the Ohio statute "does not affect an action, case, or proceeding commenced prior to July 1, 2001.").

proceeds. In support, it advances the functional concept of proceeds as any economic substitute for a secured asset. Under this doctrine of substitution, for example, insurance payments constitute proceeds when collateral is damaged by third-party tortfeasors; voluntary sale or exchange by the debtor is not required. *See, e.g.*, *Sicherman v. Falkenberg*, 136 B.R. 481, 485 (Bankr. N.D. Ohio 1992) (holding that "payment received from the insuror's settlement proceeds represented a continuation of its pre-existing security interest" under Ohio law).

We agree with the general proposition that a security interest attaches to assets that replace collateral once damaged or destroyed. However, we disagree with the bank's depiction of the settlement as a disposition of Electro-Jet stock and the resulting fund as the replacement value of the collateral. Simply put, nothing has been replaced. According to the loan agreement, the pledged stock refers only to those shares purchased with the loan, and Star Bank continues to hold these. The settlement has no bearing on the ownership of or rights to the pledged stock. At most, the fund represents a disposition of potential malpractice liability, not of Electro-Jet shares.

In characterizing the settlement as a disposition of collateral, Star Bank overlooks the causal disconnect between the pledged stock and the malpractice claims. The District Court found that the "the actions of L & D [Lindhorst & Dreidame] and Gradison did not diminish the value of the shares of stock. Rather, that stock was effectively worthless when it was purchased and remains so today." *McDannold v. Star Bank*, 111 F. Supp. 2d 941, 947 (S.D. Ohio 1999). Even if the settling defendants negligently inflated the *price* of the stock, as plaintiffs allege, they did not diminish its *worth,* which was already imperiled due to business setbacks. Accordingly, the settlement fund compensates plaintiffs for unsound legal and financial advice, not for loss of collateral. On appeal, Star Bank has not convincingly contested this reasoning other than by claiming inconsistencies in plaintiffs'

questions that remain. Rather, we simply observe that the basis for the District Court's rejection of the right has been modified by a recent Supreme Court decision and we remand for reconsideration in light of that authority.

In short, the District Court premised its ruling on the absence of common liability under ERISA. Because the settling defendants served as legal and financial advisers only, the District Court found that they were not fiduciaries of the plan and therefore not liable under ERISA. Though we agree that the settling defendants did not serve as plan fiduciaries, we do not think this status necessarily defeats common liability under ERISA or disposes of appellants' claimed right to contribution. A recent Supreme Court case, decided after the opinion below, illustrates how even nonfiduciaries can be sued under ERISA for equitable relief. *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

In *Harris Trust*, a unanimous Supreme Court held that a broker-dealer could be liable for its participation in a transaction prohibited by ERISA § 406(a), 29 U.S.C. § 1106(a). There, respondent Salomon Smith Barney sold nearly $21 million in motel properties to an ERISA pension plan. Upon discovery that the real estate interests were nearly worthless, the plan fiduciaries sued Salomon for rescission of the transaction, restitution of the purchase price with interest, and disgorgement of profits made from the use of plan assets. Salomon moved for summary judgment, arguing that ERISA does not provide a cause of action against nonfiduciaries. The Supreme Court disagreed, explaining that § 502(a)(3), one of ERISA's remedial provisions, "admits of no limit . . . on the universe of possible defendants." Id. at 246. Accordingly, the Court held that a cause of action lies under ERISA § 502(a)(3) against a nonfiduciary party-in-interest who knowingly participates in a prohibited transaction. This result confirms earlier authority within this Circuit that permitted an action for disgorgement of profits against an ERISA

because both settling and non-settling defendants share common liability under ERISA.[4]

At the outset, we note that we are not ruling on an action for contribution against the settling defendants. Instead, we are asked to decide whether such a claim even exists. At present, there is a split in the circuit courts as to whether one ERISA fiduciary may pursue an action for contribution against another fiduciary. *Compare Chemung Canal Trust Co. v. Sovran Bank / Maryland*, 939 F.2d 12, 16 (2d Cir. 1991) (recognizing a right to contribution), *and Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984) (same) *with Kim v. Fujikawa*, 871 F.2d 1427, 1432-33 (9th Cir. 1989) (disallowing a right to contribution). Cogent opinions have been written supporting each view, reasoning from congressional intent, public policy, and traditional trust law. In fact, the instant case presents an even more challenging question as the appellants here would claim a right to contribution against ERISA *non*fiduciaries. Yet we do not decide now whether contribution can be claimed from either fiduciaries or nonfiduciaries. The division in authority has not been resolved in this circuit, and this case does not permit us an opportunity to do so. Because the parties have yet to litigate their ERISA claims, we will not attempt to allocate liability among the defendants due to the significant factual

---

[4] The court also noted that the third-party defendants—Endres' lawyer and that lawyer's firm—had no right to contribution or indemnification. Though these third-party defendants joined Star Bank and Endres in briefing the issue, we agree with the District Court as to their legal rights. Appellants have not explained how these third-party defendants are liable to plaintiffs in any amount or on any theory giving rise to a claim for contribution from the settling defendants. *See* Restatement (Second) of Torts § 886A(1) (". . . when two or more persons become liable in tort *to the same person* for the same harm, there is a right to contribution among them . . .") (emphasis added) (quoted in *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 350 (6th Cir. 1998)). Thus, we will consider the claim to contribution only as between the settling and non-settling defendants, who possibly share liability under ERISA for their dealings with the plan.

theory of recovery. The bank does not address the essential distinction between an improper valuation of a stock price, as here, and the impairment of its actual market value.

This distinction is important in light of *McGonigle v. Combs*, a Ninth Circuit case Star Bank advances in support of its claim. 968 F.2d 810 (9th Cir. 1992). In *McGonigle*, co-owners of a horse breeding operation called Spendthrift Farms sold $35 million worth of stock in a private placement. When the share price plummeted, investors charged federal and state securities violations as well as common law claims of fraud and misrepresentation. Plaintiffs settled their claims against one owner and the appraiser of the broodmares, resulting in a settlement fund of $2.1 million. Because plaintiff Casares had borrowed money from Central Bank to invest in the enterprise, pledging the stock as collateral, the bank sought Casares' portion of the settlement fund as proceeds of the pledged stock. The court concluded that the bank was entitled to the fund as proceeds, explaining: "The locus of that loss was in the secured stock, and Central Bank as security holder is entitled to its lien on the settlement payments that were intended to compensate for that lost value." *Id*. at 828.

Plaintiffs' malpractice case here, in contrast, is bottomed on bad advice rather than diminution of Electro-Jet stock. Here, the "locus of the loss" was not damage to the collateral but rather common law malpractice; the plan was injured not as a purchaser of stock but as a purchaser of professional services. Plaintiffs exchanged their malpractice claims for $1.75 million, leaving unaffected all ownership interest in the pledged stock. We conclude that this fund, not derived from damage to or disposition of collateral, does not constitute proceeds.[3]

---

[3] Because we conclude that this settlement fund does not fall with the definition of proceeds provided at Ohio Rev. Code § 1309.25(A), we need not reach the question of whether ERISA's limited recourse provisions preempt Ohio law.

## III.  THE EFFECT OF THE SETTLEMENT UPON
## THE REMAINING DEFENDANTS
### (No. 00-3461)

Because plaintiffs brought this case as a derivative action on behalf of themselves and all plan participants, they were required to obtain judicial approval of any settlement. *See* Fed. R. Civ. P. 23.1. Appellants Star Bank, Endres, and the trustee of the grantor trust in which Endres held his Electro-Jet shares (collectively, the "non-settling defendants") objected to the settlement in two ways. First, they protested the "bar order" that prevents them from asserting claims against Kirkham, Lindhorst & Dreidame, and Gradison, the defendants who settled the malpractice suit. The non-settling defendants requested a hearing to assess the fairness of the bar order, which they claimed cut off their right to contribution. The District Court concluded that no hearing was necessary because the non-settling defendants had no right to contribution. J.A. 1151-54. Second, the non-settling defendants argued that their liability should be reduced proportionately, rather than on the *pro tanto* or dollar-for-dollar basis contained in the agreement. The District Court likewise rejected this argument, explaining that a proportionate allocation of liability was contrary to the joint-and-several design of ERISA. In sum, the District Court concluded that the settlement agreement was fair, reasonable, and adequate as to all parties. *McDannold v. Star Bank*, No. C-1-94-002, 1999 U.S. Dist. LEXIS 22158, at * 10-14 (S.D. Ohio June 3, 1999) (applying *Grenada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (explaining the factors to be considered when reviewing the adequacy of a proposed settlement)). The court then certified its decision for immediate appeal pursuant to 28 U.S.C. § 1292(b).

### A.   Appellants' Claimed Right to Contribution

When, as here, a settlement agreement contains a bar order extinguishing possible legal claims of non-settling defendants, the court must conduct an evidentiary fairness hearing to determine whether the settling defendants are paying their fair share of the liability. *See, e.g.*, *Cullen v. Riley* (*In re Masters Mates & Pilots Pension Plan and IRAP Litig.*), 957 F.2d 1020, 1031 (2d Cir. 1992) ("[T]hird party participation in an evidentiary fairness hearing and court approval of the settlement bar are necessary to protect the due process rights of third parties."); *Kovacs v. Ernst & Young (In re Jiffy Lube Sec. Litig.)*, 927 F.2d 155, 158 (4th Cir. 1991) ("If the proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interest be adequately represented.") (quoting Manual for Complex Litigation 2d, § 23.14 at 166 (1985)). Though agreeing with this rule, the District Court found it inapplicable and refused to hold an evidentiary hearing. On this narrow point, we vacate this decision for the reasons that follow.

The District Court found no right to contribution under either federal or Ohio law. As the appellants have not briefed or otherwise challenged the court's ruling under Ohio law, we consider their claim to contribution under federal law alone. This is appropriate because the defendants helped structure a transaction that, according to plaintiffs, violated federal law. *See Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir. 1985) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law. A departure from that principle would be unjustified in the case of ERISA fiduciaries.") (citations omitted). If the appellants can claim a right to contribution here—a question we remand to the District Court but do not ourselves decide—that right exists